George POOLE, Claimant–Petitioner,

v.

FREEMAN UNITED COAL MINING
COMPANY, Employer–Respondent,

and

Director, Office of Workers' Compensa-
tion Programs, United States
Department of Labor, Respondent.

FREEMAN UNITED COAL MINING
COMPANY, Petitioner,

v.

BENEFITS REVIEW BOARD, UNITED
STATES DEPARTMENT OF LABOR,
Andrew J. Summers and Director, Of-
fice of Workers' Compensation Pro-
grams, Respondents.

Nos. 89–1155, 89–1681.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 19, 1989.

Decided March 12, 1990.

As Amended March 12, 1990.

Howard B. Eisenberg, Carbondale, Ill., for George Poole.

Donald S. Shire, Sol. Gen., Michael J. Denney, Steven D. Breeskin, Dept. of Labor, Office of the Sol., Paul Frieden, U.S. Dept. of Labor, SOL/BL, Washington, D.C., for Office of Workers' Compensation Programs in No. 89–1155.

Carla Chapman, Linda M. Meekins, Benefits Review Bd., Dept. of Labor, Washington, D.C., for Benefits Review Bd.

Louis R. Hegeman, Barry S. Hyman, Louis D. Bernstein, Gould & Ratner, Chicago, Ill., Robert W. Lewis, Benton, Ill., for Freeman United Coal Min. Co.

Cathryn C. Helm, Dept. of Labor, Appellate Litigation, Donald S. Shire, Sol. Gen., Linda M. Meekins, Benefits Review Bd., Dept. of Labor, Washington, D.C., John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, Ill., Rae Ellen Frank James, Sylvia T. Kaser, Dept. of Labor, Black Lung Div., Washington, D.C., for Office of Workers' Compensation Programs in No. 89–1681.

Harold B. Culley, Jr., Raleigh, Ill., for Andrew J. Summers.

Before CUDAHY, FLAUM and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

These two unrelated cases, involving claims for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, present two common issues and involve conflicting medical evidence and reports by the same doctors—Dr. Rao, who examines the miners, George Poole and Andrew Summers, on behalf of the Department of Labor (DOL) and concludes that the miners have pneumoconiosis, and Dr. Sugar, who examines the miners on behalf of Freeman United Coal Mining Company (Freeman) and concludes that the miners do not have pneumoconiosis. In each case, Dr. Rao submits a DOL form report which provides a minimum of information, and Dr. Sugar writes a detailed report sensitive to the legal requirements of proving entitlement to black lung benefits. ALJ Robert Cox decided both cases in favor of the miners and relied on Dr. Rao's report. The Benefits Review Board (Board) affirmed the award of benefits in Summers's case and reversed in Poole's case.

Freeman and Poole appeal respectively from the final orders of the Board. The common issues are (1) whether Dr. Rao's report provides a "documented and reasoned" medical judgment; and (2) whether, by listing the miners' physical limitations, Dr. Rao's report adequately addressed the severity of the miners' impairment so that the ALJ could infer that they were totally disabled. In Poole's case, we reverse the decision of the Board, and in Summers's case, we remand the cause for additional consideration.

## I.

### A.

George Poole filed a black lung benefits claim on August 6, 1981.[1] On June 4, 1987, ALJ Robert Cox determined that Poole had established that he was totally disabled by pneumoconiosis which arose out of coal mine employment and awarded benefits. In deciding whether Poole had met his burden of establishing the existence of pneumoconiosis, the ALJ considered a number of medical reports, x-rays, pulmonary func-

---

1. These cases are governed by 20 C.F.R. Part 718 because both miners filed their claims after March 31, 1980. All references are to 20 C.F.R. Part 718.

tion tests, arterial blood gas studies and Poole's testimony. The x-ray evidence was conflicting, but the ALJ reasoned that since pneumoconiosis is a progressive disease and the positive x-rays were the most recent ones, he would resolve the "true doubt" in favor of Poole. Thus, he concluded that Poole had established the existence of pneumoconiosis under § 718.202(a)(1).[2]

The ALJ determined that Poole had also established the existence of pneumoconiosis under § 718.305,[3] which incorporates the criteria in § 718.204(c)(1)–(4) for determining total disability. Applying these criteria, the ALJ concluded that the pulmonary function test and arterial blood gas studies were insufficient to satisfy § 718.204(c)(1) and (2) respectively and that there was no evidence relevant to subsection (c)(3). The ALJ considered the medical reports of Drs. Parks, Sugar and Rao and found that Poole had established the existence of pneumoconiosis under subsection 718.204(c)(4).[4]

Dr. Parks, Poole's treating physician, prepared a brief report on January 7, 1987, in which he diagnosed chronic obstructive pulmonary disease caused by cigarette smoking and industrial exposure to coal dust. The ALJ found this report to be of little evidentiary value because it did not express an opinion as to whether Poole was totally disabled.

Dr. Sugar examined Poole on August 2, 1985. He reviewed Poole's employment, smoking and medical histories and conducted a physical examination including a chest x-ray, pulmonary function test and arterial blood gas study. He diagnosed hypertension (controlled), obstructive pulmonary disease and atypical chest pain. He concluded that there was no evidence of pneumoconiosis or any pulmonary abnormality related to working in the coal mines. Dr. Sugar further opined that Poole was not totally disabled. Because there was no evidence that Dr. Sugar was aware of the physical nature of Poole's coal mine employment, the ALJ discounted his report.

Dr. Rao's September 1981 report consists of a completed DOL physical examination form. He diagnosed pneumoconiosis (mild),[5] indicated that the pneumoconiosis was related to dust exposure in Poole's coal mine employment and recorded Poole's physical limitations, relative to his ability to perform various tasks in a normal work day, that may have been due to pulmonary disease. Dr. Rao did not expressly state that Poole was totally disabled; however, the ALJ concluded:

> Upon review of the Claimant's usual coal mine employment and accompanying exertional requirements, and the medical assessment completed by Dr. Rao, I find that an inference of total disability can be drawn. Thus, Dr. Rao's medical opinion constitutes probative evidence of a total and disabling pulmonary impairment.

The ALJ then invoked the presumption that Poole's pneumoconiosis arose out of

---

**2.** Section 718.202(a)(1) provides that a chest x-ray may form the basis for a finding of the existence of pneumoconiosis.

**3.** Section 718.305(a) provides in pertinent part:

> If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest x-ray submitted in connection with such miner's ... claim and it is interpreted as negative ... and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis.... The presumption may be rebutted only by establishing that the miner does not ... have pneumoconiosis, or that his or her respiratory or pulmonary im-

pairment did not arise out of, or in connection with, employment in a coal mine.

**4.** Section 718.204(c)(4) provides in pertinent part:

> Where total disability cannot be established under paragraphs (c)(1), (c)(2) or (c)(3) of this section, ... total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in [his usual coal mine employment].

**5.** Dr. Rao also diagnosed hypertension and atrial fibrillation.

his coal mine employment under § 718.203 because Poole was employed for more than twenty years in coal mines. Weighing the x-ray evidence and the medical opinions of Drs. Rao, Parks and Sugar, the ALJ concluded that Freeman had failed to rebut the presumptions of the existence of pneumoconiosis and causation.

Finally, the ALJ concluded that Poole had met his burden of proving that he was totally disabled due to pneumoconiosis. Because the criteria of § 718.204(c) apply both in the analysis of whether a miner is totally disabled and in the analysis of the presumption of pneumoconiosis under § 718.305, the ALJ referred to his earlier analysis and concluded that Poole had established total disability.

On appeal, the Board held that the ALJ's finding of total disability was not supported by substantial evidence and reversed the award of benefits. The Board reasoned that Dr. Rao's report could not constitute probative evidence of total disability because it "neither terms Claimant totally disabled nor addresses the severity of the impairment." Nor did the Board consider the other medical opinions or test results supportive of a finding of total disability.

Poole appeals arguing that the ALJ properly relied on Dr. Rao's report which was a documented and reasoned medical judgment. Poole also argues that although Dr. Rao's report does not use the words "total disability," it adequately described the severity of Poole's impairment so that in conjunction with evidence of the exertional requirements of Poole's usual coal mine work, the ALJ could properly infer that Poole was totally disabled. Thus, Poole concludes that the Board improperly reweighed the evidence when there was substantial evidence to support the ALJ's grant of benefits.

## B.

Andrew Summers filed a black lung benefits claim on September 18, 1984. On March 5, 1987, ALJ Robert Cox determined that Summers had established that he was totally disabled by pneumoconiosis which arose out of coal mine employment and awarded benefits. The ALJ considered Summers's testimony, the results of a biopsy, and numerous x-rays, pulmonary function tests, arterial blood gas studies and physicians' reports.

The ALJ found that Summers had established the existence of pneumoconiosis under § 718.202(a) which provides that a biopsy may be the basis of a finding of pneumoconiosis. The ALJ invoked the rebuttable presumption of causation of § 718.203 and concluded that Summers's pneumoconiosis arose out of his coal mine employment because Summers was employed for more than thirty years in coal mines. The ALJ concluded that Freeman had failed to rebut the presumption of causation because, upon consideration of all the evidence of record, he found that the opinion of Dr. Sugar did not outweigh the affirmative findings of Drs. Rao and Sanjabi who opined that his pneumoconiosis arose out of his coal mine employment.

The ALJ found that Summers had established total disability under § 718.204(c)(1) since the most recent pulmonary function study resulted in qualifying values. Three earlier studies did not. Freeman challenges the qualifying study arguing that there is evidence that Summers was suffering from a respiratory infection at the time the study was done which could explain why it resulted in qualifying values. Freeman also challenges the study as not conforming with the quality standards contained in § 718.103 [6] and as such is not a proper basis for a finding of total disability. In the first two studies, Summers's results were evaluated for a person who

**6.** Section 718.103(b) provides in pertinent part:
Pulmonary function test results submitted in connection with a claim for benefits shall also include a statement signed by the physician or

technician conducting the test setting forth the following:

. . . . .

(2) Name, DOL claim number, age, height, and weight of claimant at the time of the test.

was five-feet five-inches tall. The results of the last two studies were evaluated for a person who was five-feet seven-inches tall. There is evidence that Dr. Sanjabi, the physician who conducted the study, did not measure Summers's height. A difference in height of one inch would change the results from qualifying to nonqualifying. The ALJ concluded that there was no affirmative evidence regarding the respiratory infection and accepted the 1987 pulmonary function study as probative evidence, but did not address the height discrepancy.

The ALJ also found that Summers had established total disability under § 718.204(c)(4). The ALJ considered the reports of four physicians.

First, the ALJ considered Dr. Rao's report of November 1984. Dr. Rao diagnosed pneumoconiosis and hypertension. He responded "yes" to the form question asking whether in his opinion the patient's pneumoconiosis was caused by coal dust exposure. Dr. Rao then assessed Summers's physical limitations that he felt may be due to pulmonary disease.

Second, the ALJ considered the reports detailing the results of Summers's biopsy. They contained a diagnosis of pneumoconiosis, but did not address the extent of Summers's disability; therefore, the ALJ disregarded them.

Third, the ALJ considered the three reports of Dr. Sanjabi, Summers's treating physician. In April 1985, Dr. Sanjabi indicated that Summers suffered from pneumoconiosis and silicosis which was significant in contributing to his exercise tolerance. Dr. Sanjabi's other two reports do not address the issue of total disability either, and consequently the ALJ found these three reports to be of little probative value.

Fourth, the ALJ considered Dr. Sugar's July 1985 report in which he diagnosed hypertension, obesity and bronchitis. He opined that Summers was not totally disabled by any respiratory or pulmonary impairment and that he would not be prevented from returning to work in the coal mines.

In addition, the ALJ considered Summers's testimony about the physical limitations he experienced in doing household tasks and in working in the mines. The ALJ considered Summers's testimony to be highly probative since the medical reports of Drs. Rao and Sugar were one and one-half years old by the time Summers testified. The ALJ gave greater weight to Dr. Rao's report and Summers's testimony together, relative to Dr. Sugar's report, and concluded that the weight of the evidence was sufficient to establish that Summers was totally disabled by pneumoconiosis.

Because Dr. Rao's report did not expressly state that Summers was totally disabled, the ALJ also considered evidence of the jobs Summers had held and their exertional requirements. Taking into consideration the physical limitations described by Dr. Rao, relative to the exertional requirements of Summers's usual coal mine employment, the ALJ inferred that Summers was totally disabled. The ALJ then examined all of the contrary probative evidence of record and concluded that the greater weight of the evidence established that Summers was totally disabled and that Freeman had failed to rebut the finding of total disability.

On appeal, the Board affirmed noting that a physician's report need only describe either the severity of or the physical effects imposed by a miner's respiratory impairment sufficiently so that the ALJ could infer that the miner is totally disabled. The Board also concluded that the ALJ's decision to credit Dr. Rao's medical assessment as a list of physical limitations and not simply as a "recitation of history," was rational and supported by substantial evidence. Finally, the Board rejected Freeman's contention that Dr. Rao's report was undocumented and unreasoned noting that this was a determination for the ALJ and refused to reweigh the evidence or substitute its inferences for those of the ALJ.

Freeman appeals challenging the ALJ's finding of total disability under § 718.204(c)(4). Freeman challenges Dr.

Rao's report as an undocumented and unreasoned medical opinion and as insufficient evidence to support the ALJ's decision because it does not state that Summers was totally disabled or address the severity of his impairment. Freeman also argues that the ALJ misread the physical limitations in Dr. Rao's report. Freeman argues that the ALJ improperly disregarded Dr. Sugar's opinion without providing any explanation thereby substituting his own expertise for that of a qualified physician.

Freeman also challenges the ALJ's finding of total disability under § 718.204(c)(1). Specifically, Freeman argues that the ALJ disregarded evidence that Summers was suffering from a respiratory infection when he took the 1987 pulmonary function test. Freeman also attacks the validity of this study on the ground that the ALJ failed to determine Summers's correct height.

## II.

We are to determine whether the ALJ's decision, not the Board's, is supported by substantial evidence, is in accord with the law and is rational. *Peabody Coal Co. v. Helms*, 859 F.2d 486, 489 (7th Cir.1988). Substantial evidence " 'is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Smith v. Director*, 843 F.2d 1053, 1057 (7th Cir.1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). The ALJ is to weigh conflicting evidence and draw inferences from it, and a reviewing court may not set aside an ALJ's inference merely because it finds another more reasonable or because it questions the factual basis. *Smith*, 843 F.2d at 1057.

## III.

### A. Dr. Rao's Report Provides a Documented and Reasoned Medical Judgment

Given that Dr. Rao based his reports on a physical examination, electrocardiogram, chest x-ray, pulmonary function test and arterial blood gas study of each miner as well as their symptoms and medical and work histories, there is no question but that his reports are documented. *See Helms*, 859 F.2d at 490–91; *see also Buffalo v. Director*, 6 Black Lung Rep. 1–1164, 1–1166 (1984) (report based on physical examination, symptoms and patient's medical and work histories is adequately documented).

Freeman argues that Dr. Rao's reports are unreasoned because they are based on an x-ray, pulmonary function test and arterial blood gas study which were negative for pneumoconiosis. Freeman's argument misses the point of § 718.204(c)(4) which expressly applies where disability cannot be established based on these tests. To accept Freeman's argument would be to read (c)(4) out of the statute. The ALJ properly refused to analyze the results of these objective tests selectively. *Cf. Lucostic v. United States Steel Corp.*, 8 Black Lung Rep. 1–46, 1–47 (1985) (ALJ has discretion to determine whether physician's conclusions are adequately supported by underlying documentation and therefore reasoned); *Adamson v. Director*, 7 Black Lung Rep. 1–229, 1–232 (1984) (ALJ may not reject medical report solely because it is not based on any of the diagnostic tests contemplated by regulations). In addition to the tests Freeman selectively emphasizes, Dr. Rao's reports were based on the results of an electrocardiogram and a physical examination of each miner as well as information about their symptoms and work and medical histories. Considering all the sources of information available to the physician and the conclusions reached, the ALJ, as fact-finder, properly decided that Dr. Rao's medical reports were reasoned, notwithstanding the fact that Dr. Rao completed the DOL forms without elaborating upon his diagnoses, opinion as to causation or medical assessment; it was beyond the Board's power to reweigh the evidence. *See Director v. Rowe*, 710 F.2d 251, 255 (6th Cir.1983) (fact-finder is to examine validity of reasoning of medical opinion in light of studies conducted and objective indications upon which opinion is based in determining whether opinion is

documented and reasoned), *cited in Peabody Coal Co. v. Director*, 778 F.2d 358, 363 (7th Cir.1985). We note our concern, however, about Dr. Rao's practice of completing the DOL reports without providing an explanation where the form requests one. Such reports are minimally sufficient to support a claim for benefits and hamper review by this court.

### B. *The ALJ Properly Inferred That Poole Was Totally Disabled*

Freeman argues that Dr. Rao's reports are not substantial evidence of total disability because they do not state that the miners were totally disabled and because merely listing their physical limitations does not properly address the severity of the impairment. We disagree.

In determining whether total disability has been established, an ALJ must consider all relevant evidence on the issue of disability including medical opinions which are phrased in terms of total disability or provide a medical assessment of physical abilities or exertional limitations which lead to that conclusion. *See Black Diamond Coal Mining Co. v. Benefits Review Bd.*, 758 F.2d 1532, 1534 (11th Cir.1985) ("Physicians need not phrase their medical conclusions in terms of 'total disability' in order to establish a presumption sufficient to set out the physical impairments that rule out work."). A description of physical limitations in performing routine tasks may be sufficient to allow the ALJ to infer total disability. *See DeFelice v. Consolidation Coal Co.*, 5 Black Lung Rep. 1–275, 1–277 to 1–278 (1982); *see also Mazgaj v. Valley Camp Coal Co.*, 9 Black Lung Rep. 1–201, 1–204 (1986) (where physician diagnosed pneumoconiosis and listed extensive physical limitations on form which requested limitations due to pulmonary disease, Board held that ALJ irrationally rejected the medical report as not probative of total disability).

To infer disability, the ALJ must first determine the nature of the claimant's usual coal mine work and then compare evidence of the exertional requirements of the work with medical opinions as to the claimant's work capability. *See Parsons v. Black Diamond Coal Co.*, 7 Black Lung Rep. 1–236, 1–239 (1984); *see also Turner v. Director*, 7 Black Lung Rep. 1–419, 1–421 (1984); *cf. Ratliff v. Benefits Review Bd.*, 816 F.2d 1121, 1124 (6th Cir.1987) (disability was established where miner testified that he had much more difficulty performing usual coal mine work than in past). The ALJ is to make the ultimate finding of total disability, which is a legal determination. *Hvizdzak v. North Am. Coal Corp.*, 7 Black Lung Rep. 1–469, 1–471 (1984).

Dr. Rao's reports described the miners' physical limitations in performing routine tasks and included their respective work histories detailing the various jobs each had held throughout their coal mine employment. Specifically, Dr. Rao indicated that Poole could walk six to eight blocks, climb one to two flights of stairs, lift seventy-five pounds and carry seventy-five pounds for thirty to fifty feet. In addition, the ALJ had before him some evidence of Poole's usual coal mine work and its requirements. In his application for benefits, Poole stated: "[I] have wheezing and shortness of breath. [I] had to climb several steps on my job. This climbing was hard for me. Dust and gas coming from the dryer in the preparation plant caused me to cough a lot and made me sick." Poole testified that his last job was plant maintenance and prior to that he ran a dryer. Poole also testified that he retired because he could not keep up with a co-worker. Based on this evidence, the ALJ found that Poole's usual coal mine employment entailed hard physical labor and prolonged exposure to coal dust and gases and concluded that he was totally disabled. While Poole's testimony did not outline fully the specific requirements of his coal mine work, there is substantial evidence in the record to support the ALJ's inference of total disability.

As for Summers, Dr. Rao's report indicated that he could walk one block, climb eight to nine steps, lift forty pounds and carry it 300 feet, relative to a normal work day. Evidence in the record indicates that Summers's last job was belt spillage which required him to stand for eight hours per

day and to clean along a mile-long stretch of belt shoveling thirty-pound loads of coal approximately 300 times per day. Considering these severe physical limitations with the evidence of record regarding the exertional requirements of Summers's job, there is substantial evidence to support the ALJ's finding of total disability.

## IV.

Freeman raises additional issues unique to Summers's claim. We address those now.

### A. *The ALJ's Misreading of Dr. Rao's Report May Have Influenced His Decision and the Court Is Unable to Conclude That it Was a Harmless Error*

Dr. Rao's medical assessment was that Summers could lift forty pounds and carry it 300 feet. The ALJ quoted the distance as thirty feet. Freeman argues that the ALJ's decision was the result of this misreading and therefore should be reversed. While the ALJ's decision noted each of the limitations listed in Dr. Rao's report, it is unclear whether the misquoted limitation was determinative: the ALJ could have found total disability without regard to this limitation because there is evidence that Summers's usual coal mine employment required him to maintain a mile-long section of the belt line, and Summers could walk only one block. Given our standard of review, however, it is inappropriate for the court to supply a rationale for the ALJ's decision or to affirm on grounds other than those relied upon by the ALJ. *Cf. Peabody Coal Co. v. Hale,* 771 F.2d 246, 249 (7th Cir.1985) (informed appellate review requires that ALJ adequately explain conclusions and findings); *Rowe,* 710 F.2d at 255 (when ALJ does not make necessary factual findings, reviewing body is to remand to ALJ and not to fill gaps in ALJ's decision). Because the discrepancy could have been influential given the requirements of Summers's belt spillage work, we remand for the ALJ to address specifically each of the physical limitations listed in Dr. Rao's report as it re-

lates to the exertional requirements of Summers's coal mine employment.

### B. *The ALJ Adequately Explained His Reason for Giving Dr. Sugar's Report Less Weight*

 Freeman argues that the ALJ completely disregarded Dr. Sugar's opinion without any explanation and substituted his expertise for that of Dr. Sugar. The ALJ did give Dr. Sugar's report less weight, but weighing conflicting medical evidence is precisely the function of the ALJ as fact-finder. *See Arch Mineral Corp. v. Director,* 798 F.2d 215, 221 (7th Cir.1986). The ALJ did not disregard Dr. Sugar's report, he considered it relative to Dr. Rao's report and Summers's testimony and found that the greater weight of the evidence was sufficient to establish that Summers was totally disabled. The ALJ committed no error.

### C. *The ALJ Improperly Failed to Address the Height Discrepancy Although the Effect of the Respiratory Infection Was Properly Considered*

 Freeman argues that Summers was suffering from an acute respiratory infection which would have affected the results of the pulmonary function test. The ALJ rejected this argument in his order denying Freeman's motion for reconsideration. The ALJ acknowledged that such a possibility existed, but found that there was no affirmative evidence to support Freeman's position. The ALJ's decision is supported by substantial evidence.

As to the height discrepancy, we reverse the decision of the Board and remand to the ALJ for a determination of Summers's correct height and the effect, if any, on the validity of the January 1987 pulmonary function study as a basis for a finding of total disability.

## V.

Although Dr. Rao's form reports merely list the miners' physical limitations, the reports are adequately documented and reasoned, and it was proper for the ALJ to rely on them. As for Poole, while the

evidence regarding the exertional requirements of his usual coal mine work was not extensively developed, it was adequate in conjunction with Dr. Rao's medical assessment to support the ALJ's finding of total disability. Because there was substantial evidence to support the ALJ's decision, we reverse the decision of the Benefits Review Board.

As for Summers, Dr. Rao's medical assessment adequately specified his physical limitations for purposes of inferring total disability; however, because the ALJ misquoted Dr. Rao's report, we remand for the ALJ to clarify the basis for his finding of disability. Specifically, the ALJ should address each limitation outlined in Dr. Rao's report as it relates to the exertional requirements of Summers's usual coal mine employment. We also remand for the ALJ to address the height discrepancy and its effect on the validity of the 1987 pulmonary function study.