Junior J. SHELTON, Petitioner,

v.

OLD BEN COAL COMPANY and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 90–1941.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 19, 1990.

Decided May 21, 1991.

Harold B. Culley, Jr., Raleigh, Ill., for petitioner.

Steven D. Breeskin, Elizabeth Hopkins, Dept. of Labor, Office of the Solicitor, Carla Chapman, Benefits Review Bd., Dept. of Labor, Washington, D.C., Paul Frieden, Dept. of Labor, Black Lung Div., Mark E. Solomons, Arter & Hadden, Washington, D.C., Steven L. Crow, Cleveland, Ohio, for respondents.

Before POSNER, COFFEY, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

This is a petition by the claimant, Junior Shelton, to review a decision by the Benefits Review Board (BRB) affirming the denial of black lung benefits. Mr. Shelton is asking this court to remand this case on two grounds: 1) that the Administrative Law Judge (ALJ) erred in his consideration of the medical evidence by finding that there was no total disability; and 2) that the BRB erred in relying on the causation standard enunciated in *Wilburn v. Director, OWCP*, 11 BLR 1–135 (1988).

## I

### BACKGROUND

Junior Shelton worked for Old Ben Coal Company for 38 years, first as a coal miner, then, for the last 13 years, as a mine examiner. He was a pack-a-day cigarette smoker from 1941 to 1985 and has been a half-pack smoker since that date. He has been diagnosed as having several physical problems in addition to pneumoconiosis. He is obese and has hypertension, chronic bronchitis, and angina pectoris. He applied for benefits in September 1984. He retired on January 2, 1985, at the age of 62. He worked on the first two days of 1985 specifically to obtain extra retirement benefits. He has not worked since.

## II

### ANALYSIS

■ The regulations that govern this case are found in 20 C.F.R. Part 718. Under Part 718, to establish entitlement to benefits, a claimant must show: 1) that he suffers from pneumoconiosis; 2) that his pneumoconiosis arose out of his coal mine employment; and 3) that he is totally disabled due to his pneumoconiosis. *See Lollar v. Alabama By–Products Corp.*, 893 F.2d 1258, 1262 (11th Cir.1990). Failure to establish any of these requirements precludes entitlement to benefits.

The ALJ found that Mr. Shelton suffers from pneumoconiosis. *See* 20 C.F.R. § 718.202. This finding is not contested. The ALJ did not specifically address whether the pneumoconiosis arose out of coal mine employment, but he found that Mr. Shelton worked in the coal mine for 38 years.[1] There is a rebuttable presumption that the pneumoconiosis arose out of the coal mine employment if the miner has

---

1. Presumably, the ALJ did not make a formal finding on this issue because he found no total disability.

worked in a coal mine for ten years or more. 20 C.F.R. § 718.203(b). In analyzing the total disability issue, the ALJ considered pulmonary function tests, arterial blood gas studies, and the opinions of physicians. *See* 20 C.F.R. § 718.204(c). In weighing the medical evidence before him, the ALJ found that Mr. Shelton had not met his burden of proving that he was totally disabled. The ALJ specifically found that none of the arterial blood gas studies produced qualifying values and that none of the physicians opined that Mr. Shelton was totally disabled.

On appeal to the BRB, Mr. Shelton contested the ALJ's conclusions regarding total disability. Mr. Shelton raised two arguments before the BRB: 1) that the ALJ erred in finding that none of the blood gas studies produced qualifying values; and 2) that the ALJ erred in disregarding the inference of total disability in the medical assessment of Dr. Rango Rao. The BRB admitted that the ALJ erred in interpreting the blood gas studies and in not considering Dr. Rao's report as evidence of total disability. Despite the infirmities in the ALJ's analysis, however, the Board affirmed the denial of benefits. The BRB concluded that, because the causal link between Mr. Shelton's total disability and his pneumoconiosis could not be established on the record in this case, the ALJ's errors were harmless.

Mr. Shelton moved for reconsideration. He argued that the Board applied the wrong standard of causation. In its order and motion for reconsideration, the BRB, noting that *Wilburn v. Director, OWCP*, 11 BLR 1–135 (1988) had not been overruled in the Seventh Circuit, as it had been in other circuits,[2] found that Mr. Shelton's pneumoconiosis was not "in and of itself" totally disabling.

### A. Standard of Review

■ Although this appeal comes to this court from the Benefits Review Board, in reviewing the denial of black lung bene-

fits, this court must evaluate the ALJ's judgment, not the Board's. *Collins v. Old Ben Coal Co.*, 861 F.2d 481, 486 (7th Cir. 1988). We must determine whether the ALJ's decision is rational, is supported by substantial evidence, and is consistent with the law. *Migliorini v. Director, OWCP*, 898 F.2d 1292, 1294 (7th Cir.1990). Although we must review the entire record, we may not redetermine the facts or substitute our judgment for the ALJ's. *Freeman United Coal Mining Co. v. Benefits Review Board*, 919 F.2d 451, 452 (7th Cir. 1990). Our review of questions of law, however, is *de novo*. *Director, OWCP v. Midland Coal Co.*, 855 F.2d 509, 511 (7th Cir.1988). "The Review Board has the identical scope of review when sitting as an appellate panel reviewing decisions of the ALJ." *Zettler v. Director, OWCP*, 886 F.2d 831, 834 (7th Cir.1989) (per curiam). Our review of the Board's decision is limited to whether the Board adhered to its scope of review and to whether the Board committed an error of law. *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588, 589–90 (7th Cir.1985).

### B. Total Disability

To prove total disability, Mr. Shelton must show that his pneumoconiosis prevents him from performing his usual coal mine work and from engaging in gainful employment that requires comparable skills in the immediate area of his residence. 20 C.F.R. § 718.204(b). Mr. Shelton's duties as a mine examiner consisted of examining all areas of the mine for gases, unsafe equipment, and dusty conditions. He was required to walk approximately three or four miles each shift while performing these duties.

On appeal to the BRB, Mr. Shelton argued that the ALJ erred in interpreting the evidence. First, Mr. Shelton argued that the ALJ misinterpreted the results of the arterial blood gas studies. While admitting that the exercise blood gas studies from

**2.** In his motion for reconsideration, Mr. Shelton argued that other circuits that had addressed the issue had found the *Wilburn* standard to be erroneous. *See Adams v. Director, OWCP*, 886 F.2d 818 (6th Cir.1989); *Bonessa v. United States Steel Corp.*, 884 F.2d 726 (3d Cir.1989); *Mangus v. Director, OWCP*, 882 F.2d 1527 (10th Cir. 1989).

1984 and 1985 were nonqualifying, Mr. Shelton argued that the 1984 resting blood gas study contained qualifying values under the regulations and that the 1985 resting blood gas study exceeded the values by only 1 mm. He further argued that the regulations make no distinction between the resting and exercise blood gas studies, and, therefore, the ALJ's assessment was erroneous. Although Mr. Shelton now questions the validity of the exercise blood gas study of October 18, 1985,[3] the BRB only conceded that the ALJ erred in mischaracterizing the results of the November 13, 1984 blood gas study. Second, Mr. Shelton argued to the BRB that total disability could be inferred from Dr. Rao's medical assessment. Dr. Rao examined Mr. Shelton at the request of the Department of Labor on November 14, 1984. His report listed Mr. Shelton's physical limitations that may be due to pulmonary disease as: 1) walking (distance): 3 blocks; 2) climbing (stairs): 2 flights; 3) lifting (weight): 100 lbs.; and 4) carrying (weight and distance): 100 lbs./50 ft. The ALJ did not consider this evidence because Dr. Rao did not expressly state that Mr. Shelton was totally disabled. It is not essential for a physician to state specifically that an individual is totally impaired—a list of the impairments that prohibit the claimant from performing his usual work suffices. *Poole v. Freeman United Coal Mining Co.*, 897 F.2d 888, 894 (7th Cir.1990). The BRB found that the ALJ erred in failing to consider whether Dr. Rao's medical assessment supports a finding of total disability.

The respondents argue that any error committed by the ALJ was harmless and that the medical evidence indicates that the ALJ would have arrived at the same decision in any case. First, they point out that the job of a mine examiner is not very physically demanding. Regarding the blood gas studies, they note medical evidence that indicates that Mr. Shelton's blood gas exchange improved with exercise, which negates an inference of total disability. Regarding Dr. Rao's report, they contend that his report is not evidence of total disability because it did not provide an explanation of his findings on the form[4] and because it significantly understates Mr. Shelton's smoking record as having been ten years. Moreover, none of the other five doctors whose reports the ALJ considered expressly found total disability due to pneumoconiosis. On the contrary, three doctors explicitly stated that Mr. Shelton was not totally disabled by his impairments.

"It is the ALJ's duty to consider all of the evidence and make findings of fact and conclusions of law which adequately set forth the factual and legal basis for his decision." *Director, OWCP v. Rowe*, 710 F.2d 251, 254–55 (6th Cir.1983). An ALJ must consider all relevant medical evidence and may not disregard the medical conclusions of a qualified doctor. *Pancake v. AMAX Coal Co.*, 858 F.2d 1250, 1255 (7th Cir.1988). Furthermore, the ALJ must consider the nature of the claimant's coal mine work. Then he must compare the evidence of exertional requirements of the work with the medical opinions regarding the claimant's work capability. *Poole*, 897 F.2d at 894. This court may neither fill in the gaps in the ALJ's reasoning, *id.* at 895, nor decide the facts anew, *Zettler*, 886 F.2d at 834, as respondents ask us to do. "[W]eighing conflicting medical evidence is precisely the function of the ALJ as factfinder." *Poole*, 897 F.2d at 895.

In sum, the ALJ committed a number of errors. He failed to make a specific finding of whether Mr. Shelton's pneumoconiosis arose out of his coal mine employment. More fundamentally, in analyzing

**3.** The record indicates that the 1985 exercise blood gas study was stopped before it was finished because Mr. Shelton was out of breath. This blood gas study was administered by the respondents' doctor, Dr. Selby. Dr. Selby's interpretation of the exercise blood gas study was that Mr. Shelton showed a "lack of effort" in performing the test. Another of respondents' doctors, Dr. Hippensteel, later interpreted this test as simply indicating that Mr. Shelton was in poor condition.

**4.** Although this court has noted its concern over the lack of explanations in Dr. Rao's reports, we have allowed an ALJ to rely on them in finding total disability. *See Poole*, 897 F.2d at 895.

the available medical evidence, the ALJ committed two errors in determining whether Mr. Shelton was totally disabled—errors that, upon a reweighing of the evidence, *may* change the outcome on the issue of total disability.

### C. Causation

■ While acknowledging that the ALJ erred, the BRB excused the ALJ's errors as harmless because Mr. Shelton had not proved causation under the "in and of itself" standard enunciated in *Wilburn v. Director, OWCP*, 11 BLR 1–135 (1988). However, this standard was overruled by this circuit's recent decision in *Shelton v. Director, OWCP*, 899 F.2d 690 (7th Cir. 1990) in favor of a "necessary condition" standard. We cannot as easily excuse the ALJ's errors as harmless given the fact that they were compounded by the BRB's reliance on an incorrect legal standard.

The proper causation standard requires "that black lung disease be a necessary, though it need not be a sufficient, condition of the miner's total disability." *Shelton*, 899 F.2d at 693. In other words, Mr. Shelton must prove that but for his pneumoconiosis he would not be totally disabled. *Hawkins v. Director, OWCP*, 907 F.2d 697, 701 (7th Cir.1990).[5] The ALJ did not discuss the causation issue nor make any findings of fact regarding causation. Whether Mr. Shelton has met his burden of showing causation requires an examination of the same evidence that the ALJ must consider in determining total disability.

The only medical evidence that links Mr. Shelton's pneumoconiosis with total disability is Dr. Rao's report.[6] His report does not state specifically that pneumoconiosis is a necessary condition of Mr. Shelton's total disability—causation must be inferred from his medical assessment. On one page, Dr. Rao listed Mr. Shelton's physical limitations that may be the result of pulmonary disease. On the next page, he listed Mr. Shelton's cardiopulmonary problems as due to hypertension, angina pectoris, and pneumoconiosis.[7] The BRB found that listing one of the cardiopulmonary problems as pneumoconiosis was insufficient to establish the requisite causal relationship between the disability and pneumoconiosis under the *Wilburn* standard. Under the "necessary condition" standard, however, Dr. Rao's report can be read as showing that Mr. Shelton's total disability results from a combination of pneumoconiosis, angina pectoris, and hypertension. *See Adams v. Director, OWCP*, 886 F.2d 818, 826 (6th Cir.1989) (under simple contributing cause standard, where pneumoconiosis is one of a combination of medical problems that cause the disability, the burden of proof is satisfied). Because the physical limitations were listed under those that may be due to pulmonary disease, pneumoconiosis can be viewed as a necessary condition of those limitations. On this record, we cannot say, as a matter of law, that the requisite causation could not be established upon an assessment of *all* the evidence. Whether a causal link can be established under the "necessary condition" standard therefore requires a weighing of all the evidence by the ALJ. We emphasize that we express no opinion with regard to the outcome.

### CONCLUSION

The ALJ failed to make a finding of whether Mr. Shelton's pneumoconiosis

5. In contrast, under the *Wilburn* "in and of itself" standard, a claimant must carry the burden of showing that his total disability was due to pneumoconiosis standing alone. *Adams*, 886 F.2d at 820.

6. None of the other doctors' reports in the record indicate total disability and therefore are not directly relevant to the causation issue. Mr. Shelton argues that the report of Dr. Mings, his personal physician, supports a finding of causation. Though Dr. Mings found pneumoconiosis, he merely repeated Mr. Shelton's statement that he had to quit his job. One other doctor only noted the existence of pneumoconiosis. Three doctors, though specifically finding no total disability, opined that Mr. Shelton's impairments were caused by chronic bronchitis, resulting from his cigarette smoking and from nonpulmonary problems, such as congestive heart failure, obesity, and hypertension.

7. Dr. Rao's report is flawed, however, in that it dramatically mischaracterizes Mr. Shelton's smoking history as 10 years as opposed to over 44 years.

arose out of coal mine employment. The ALJ was required to consider all of the medical evidence before him. *Pancake,* 858 F.2d at 1255. He failed to do so. The ALJ's errors were compounded by the BRB by its application of the incorrect legal standard in finding harmless error in the ALJ's decision.

We cannot say, as a matter of law, that the ALJ would not have found total disability even considering all of the evidence. Nor can we say, as a matter of law, that, had the ALJ found total disability, the necessary causal link between Mr. Shelton's pneumoconiosis and his total disability still could not have been established. Therefore, we vacate the BRB's decision and remand this case to the ALJ for a determination of total disability and a finding of whether Mr. Shelton's pneumoconiosis arose out of his coal mine employment. If the ALJ finds that these requirements for entitlement to benefits have been shown, he should then determine whether the causal link exists between Mr. Shelton's pneumoconiosis and his total disability using the correct legal standard.

VACATED AND REMANDED

COFFEY, Circuit Judge, dissenting.

In remanding this case to the ALJ, the majority has required the application of the "contributing cause" or "necessary condition" standard established in this court's decisions in *Shelton v. Director, OWCP,* 899 F.2d 690 (7th Cir.1990) and *Hawkins v. Director, OWCP,* 907 F.2d 697 (7th Cir. 1990). For reasons more fully discussed in my *Compton* concurrence, *Compton v. Inland Steel Coal Co.,* 933 F.2d 477 (7th Cir.1991) (Coffey, J., concurring), I am convinced that the all-inclusive *Shelton–Hawkins* standard is inconsistent with Congress' clear intent that a miner establish that his total disability was primarily due to pneumoconiosis. *See also Collins v. Director, OWCP,* 932 F.2d 1191 (7th Cir. 1991) (Coffey, J., concurring). Rather, I believe that a miner should be required to demonstrate that pneumoconiosis constituted *at least 51 percent* of the cause of his total disability, as this standard implements

Congress' intent that only those who suffered from a medically documented pneumoconiosis-caused total disability should recover black lung benefits. *See* 20 C.F.R. § 718.402 (requiring medical evidence adequate to support claim). A requirement of less than 51 percent of causation, such as the *Shelton–Hawkins* standard, is so all expansive that it improperly permits recovery of black lung benefits when a miner's total disability was not "due to" pneumoconiosis but may have been "due to" a number of other unrelated medical problems and/or physical infirmities, such as emphysema, tuberculosis, cigarette smoking, obesity, hypertension, alcoholism, kidney failure, asbestos-related diseases, heart disease or diabetes. The *Shelton–Hawkins* standard would permit recovery of black lung benefits in cases where pneumoconiosis was as little as five or perhaps even three percent of the cause of total disability, as long as coal mining was deemed "necessary" to the pneumoconiosis, and pneumoconiosis was deemed "necessary" to the miner's total disability. This amorphous and all-inclusive standard fails to give ALJs or other fact finders guidance in accordance with the congressional intent to limit benefits to miners where total disability was more than 50 percent attributable to pneumoconiosis. A miner conceivably could recover full benefits even if his total disability were ninety-five percent attributable to cirrhosis of the liver or cancer of the pancreas and only five percent attributable to pneumoconiosis. If we are to protect the assets of the funds for truly deserving claimants, the mere fact of having been employed in a coal mine should not be a basis for recovery of disability benefits when the medical evidence present fails to demonstrate that pneumoconiosis was the major (51 percent) but not 100 percent of the contributing cause of a miner's total disability. Furthermore, the "51 percent" standard effectively conforms to the legislative intent underlying the Black Lung Benefits Act, including the 1981 amendments, in which Congress stated its intent to tighten eligibility requirements to safeguard the Black Lung Trust Fund for those

truly deserving benefits in order to alleviate and control the expanding deficit in the Trust Fund.

The facts in the case before us illustrate the permissive and ambiguous nature of the *Shelton–Hawkins* "necessary condition" or "contributing cause" standard of causation, as it permits the ALJ to find disability "due to" pneumoconiosis in a case where the majority states, in regard to the only medical evidence of causation, "Dr. Rao's report can be read as showing that. Mr. Shelton's total disability results from a combination of pneumoconiosis, angina pectoris, and hypertension," Majority Opinion at 508, without any percentage of causation noted. In contrast, the objective "percentage" standard would clearly prevent Shelton from receiving benefits on the basis of Dr. Rao's unquantified report. Adopting such an objective standard would lead to consistent treatment of applicants as well as to stability of the Black Lung Benefits Trust Fund. Thus, on the basis of the record made before the ALJ, I would hold as a matter of law that Shelton's failure to demonstrate that his purported total disability was "due to" pneumoconiosis renders harmless any alleged error in the ALJ's consideration of whether Shelton was totally disabled. The ALJ's rejection of Shelton's claim should be affirmed.