In the
United States Court of Appeals
For the Seventh Circuit

No. 97-2381

HAROLD D. CROWE,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, and
ZEIGLER COAL COMPANY,

Respondents.

Petition for Review of a Decision of the Benefits
Review Board, United States Department of Labor.
BRB No. 96-827 BLA

Argued May 30, 2000--Decided August 21, 2000

Before POSNER, COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.  From 1975 until 1980, Petitioner Harold D. Crowe ("Crowe") was employed as a coal car operator for the Zeigler Coal Company ("Zeigler") in Des Plaines, Illinois. But due to respiratory problems which he claims resulted from inhaling coal and rock dust, Crowe has been unable to work since June 1980./1 On January 22, 1981, Crowe filed an initial claim for benefits under the Black Lung Benefits Act, 30 U.S.C. sec.sec. 901-945. However, according to Crowe, his illiteracy prevented him from properly responding to repeated requests from the Department of Labor ("DOL") to submit documentation "required to process [his] claim." The DOL subsequently denied his 1981 claim on procedural grounds only and did not reach the merits of Crowe's application.

Nearly ten years later, Crowe filed a second claim for black lung benefits, in which he included medical records dating back to 1980. The DOL denied his 1990 claim, ruling that he had failed to demonstrate a material change in his health conditions since the denial of his first claim. The DOL also determined that Crowe failed to demonstrate that: (1) he had black lung disease; (2) his respiratory problems were caused, at least in part, by coal mine work; and

(3) he was totally disabled due to black lung disease. Thereafter, an administrative law judge ("ALJ") denied his second claim, concluding that Sahara Coal Co. v. Office of Workers' Compensation Programs ("McNew"), 946 F.2d 554 (7th Cir. 1991) prevented him from reaching the merits of Crowe's application for black lung benefits. The ALJ's decision was affirmed by the Benefits Review Board ("Review Board").

Crowe now petitions this court for a review of the Review Board's final order denying him black lung benefits, arguing that the Review Board "failed to engage in reasoned decisionmaking" and "exceeded its statutory authority" in affirming the ALJ's findings. The petition for review is GRANTED, and the petition is REMANDED to the ALJ for proceedings consistent with this opinion.

I.  BACKGROUND

In June 1980, Crowe was forced to leave his job as a coal car operator due to respiratory problems which he contends resulted from inhaling coal and rock dust and thereafter, on January 22, 1981, filed his initial claim for black lung benefits pro se. On February 5, 1981, the DOL advised Crowe in a letter that in order for his claim to proceed, he must submit documentation "required to process [his] claim," including "[p]roof of coal mine employment," birth certificates of his children and prior W-2 forms. The petitioner, possibly because of his illiteracy, did not respond and one month later on March 9, 1981, the DOL sent Crowe a second letter, again explaining that he had failed to provide the necessary documentation and that "[i]f you do not respond to this notice within 30 (thirty) days, your claim may be DENIED for failure to prove necessary facts in your case."

When the DOL did not receive the necessary information "required to process [his] claim," the DOL sent a third and final letter dated May 27, 1981, which recited:

IF YOU DO NOT WRITE OR CALL WITHIN THIRTY (30) DAYS, YOUR CLAIM WILL BE DECLARED ABANDONED. IN THAT EVENT THIS LETTER WILL SERVE AS NOTICE OF DENIAL OF YOUR CLAIM FOR FAILURE TO PROVIDE EVIDENCE NECESSARY TO YOUR CLAIM.

The petitioner failed to respond to this letter and his 1981 claim for black lung disease benefits was denied on procedural grounds only without reaching the merits of his claim.

Crowe waited almost ten years and then filed a second claim for black lung benefits with the DOL on August 15, 1990. On January 9, 1991, the DOL

denied Crowe's second claim after making a finding that he had failed to demonstrate that: (1) he ever had black lung disease; (2) it was caused, at least in part, by coal mine work; (3) he was totally disabled due to black lung disease; and (4) there was a "material change in conditions" since the denial of his 1981 claim. Thereafter, Crowe requested and was granted a hearing before an ALJ, who initially denied Crowe black lung disease benefits, but after a remand from the Review Board,/2 reversed himself and awarded benefits. But when Zeigler filed a motion for reconsideration, on a third kick at the cat, the ALJ reversed himself again, and, relying on Sahara Coal, denied benefits to Crowe:

Mr. Crowe presented no evidence at all with his original [1981] application for benefits. He then reapplied after the first denial had become final and presented evidence which I concluded in the decision and order on remand is sufficient to establish that he is totally disabled due to pneumoconiosis arising from coal mine employment. Under the McNew [Sahara Coal Co.] reasoning, however, Mr. Crowe would be attempting to relitigate his original claim by submitting the new claim and additional evidence . . . .

. . .

I therefore find that the claim filed by Mr. Crowe [in 1990] must be denied because the claimant abandoned his previous claim . . . .

(Emphasis added).

Crowe appealed the ALJ's decision to the Review Board. In a March 18, 1997 letter (likely written with someone else's assistance), Crowe explained that inaccurate advice from an employee of the social security office compounded with his illiteracy, caused the problem with his 1981 application for benefits:

[I]t was extremely difficult to find anyone to help me with my black lung claim. I contacted many lawyers both locally and within surrounding counties and none could give me any information about black lung. As I was trying to deal with my black lung claim I contacted the social security office where I had originally filed my black lung claim, hoping they would have some information to help me deal with the claim. After contacting them a few times one of the employees at the social security office told me that I shouldn't concern myself with the black lung claim so much, because if I qualified for disability social security I would automatically qualify for black lung benefits. Since I could get help with my disability claim, but could not find any help for

my black lung claim I just went ahead pursuing my [social security] disability claim under the impression I was pursuing both claims. Since I am illiterate I have to take another person's word for everything. Since I did file both claims on the same day and the same place, with the same person this did make sense to me.

. . .

Now I would like to address the issue of non response [sic] from the claims examiner in May 1981. I do vaguely remember getting some mail from the claims examiner. At that time I thought I was pursuing both claims through social security but I have to add for the record the letter that they state was dated May 27, 1981, I do not know the reason but, I do not have any knowledge of the contents that they say was in the letter.

(Emphasis added)./3 Despite Crowe's compelling explanation and the ALJ's flip-flopping, not to mention the ALJ's cursory analysis of Sahara Coal,/4 the Review Board affirmed the ALJ's decision and denied Crowe's motion for reconsideration. Crowe subsequently filed a petition for review with this court./5

II.  ISSUES

On appeal, Crowe, now represented by counsel, alleges that the Review Board "failed to engage in reasoned decisionmaking" and "exceeded its statutory authority" in affirming the ALJ's denial of black lung benefits.

III.  DISCUSSION

Although the petitioner is appealing a decision of the Review Board, "[i]f the ALJ's decision passes muster, then the decision of the Board affirming the ALJ's determination likewise will be affirmed by this court." See Peabody Coal Co. v. Shonk, 906 F.2d 264, 267 (7th Cir. 1990). Because Crowe challenges the ALJ's application of this court's holding in Sahara Coal, we review the denial of his 1990 claim for black lung disease benefits de novo. See Keeling v. Peabody Coal Co., 984 F.2d 857, 862 (7th Cir. 1993); Shelton v. Old Ben Coal Co., 933 F.2d 504, 506 (7th Cir. 1991) ("With respect to questions of law, however, our standard of review is de novo.").

In Sahara Coal Co. v. Officer of Workers' Compensation Programs, 946 F.2d 554, 556 (7th Cir. 1991) (emphasis added), this court resolved a case involving a second claim for black lung benefits, explaining that:

[a] second application for black lung benefits, filed after the first application was finally denied, may be granted only (as far as relates to this case) if there has been "a material change in conditions." 20 C.F.R. sec. 725.309(d). Otherwise that first denial, having become final, is res judicata and bars a subsequent application. Lukman v. Director, 896 F.2d 1248, 1253-54 (10th Cir. 1990); cf. Pittston Coal Group v. Sebben, 488 U.S. 105, 122-23, 109 S. Ct. 414, 424-25, 102 L. Ed. 2d 408 (1988). . . . It is not enough that the new application is supported by new evidence of disease or disability, because such evidence might show merely that the original denial was wrong, and would thereby constitute an impermissible collateral attack on that denial. Suppose for example that in his original application the miner had presented no evidence at all, and been turned down. He reapplies after the first denial has become final and this time presents an abundance of evidence. If the evidence shows not that his condition has worsened since the first application but merely that he should not have been turned down, he has failed to demonstrate a material change in his condition; he is merely attempting to relitigate his original claim.

Accordingly, under Sahara Coal, a claimant who files a second application for black lung benefits must demonstrate a "material change in conditions," which is defined as: (1) "the miner did not have black lung disease at the time of the first application but has since contracted it and become completely disabled by it"; or (2) "his disease has progressed to the point of becoming totally disabling although it was not at the time of the first application." Id. "Otherwise that first denial, having become final, is res judicata and bars a subsequent application." Id.; see Peabody Coal Co. v. Spese, 117 F.3d 1001, 1008-09 (7th Cir. 1997) (en banc).

Turning our attention to the case at hand, we are presented with an entirely different factual situation than what was presented in Sahara Coal. While it is true that both Sahara Coal and this case involve successive claims for black lung benefits, contrary to the ALJ's conclusion and the respondent Zeigler's assertions, the similarity ends there. Crowe's initial application for benefits was denied solely on procedural grounds and without any discussion of or much less any ruling on the merits of his health condition and thus, does not fit within the parameters of Sahara Coal. The basis of our reasoning in Sahara Coal is that "[t]he law of preclusion . . . bars relitigation of issues between the same parties when those issues were actually litigated and necessary to the decision

of the earlier tribunal." Peabody Coal, 117 F.3d at 1008 (emphasis added). But Crowe's 1981 claim was denied by the DOL on procedural grounds because the petitioner failed to provide documentation "required to process [his] claim" (i.e., proof of coal mine employment, birth certificates of his children and prior W-2 forms). Indeed, the DOL in 1981 failed to reach the merits of Crowe's health condition and never saw fit to determine whether Crowe met the standard of proof required to establish pneumoconiosis. Conversely, in Sahara Coal, the claimant's initial claim for benefits was denied by the DOL on the merits, and the claimant filed his second claim two and one-half years later. See Sahara Coal, 946 F.2d at 556.

Furthermore, while the record is unclear as to whether the claimant in Sahara Coal proceeded pro se, the record before us is clear that Crowe filed both his 1981 and 1990 claims for black lung benefits without the benefit of counsel. We also find compelling the petitioner's explanation that his failure to provide the requested information "required to process [his 1980] claim" was due to the confusion caused by the social security office and his lack of educational capacity to comprehend the letters due to his illiteracy. When his illiteracy is considered in conjunction with his lack of representation and the misinformation provided by the representative from the social security office, we are of the opinion that it would be unfair and improper to hold that the procedural denial of the petitioner's initial claim is sufficient to deprive him of an opportunity with the assistance of counsel to advance his 1990 claim on the merits of his health condition. See also Marin v. HEW, 769 F.2d 590, 593 (9th Cir. 1985) (emphasis added) ("[A] denial with prejudice may be a final judgment with res judicata effect as long as the result is not unfair.").

We therefore conclude that Sahara Coal is inapplicable and decline to hold that his 1990 claim for black lung benefits "is merely [an attempt] to relitigate his original claim." Because Sahara Coal does not apply to the specific and unique facts of this case, we hold that Crowe was not required to demonstrate a "material change in conditions" in his 1990 claim./6

Turning to the merits of the petitioner's 1990 claim for black lung benefits,/7 the record reflects that in August 1980, one year prior to the filing of his initial claim, Dr. Curtis Krock, Crowe's doctor and a board certified specialist in pulmonary disease and internal

medicine, examined and diagnosed the petitioner with bronchitis and asthma and concluded that Crowe "was not capable of work in an industrial environment because of his tremendous paroxysms of coughing" resulting from "specific dust exposure."/8 In February 1982, Dr. Krock again examined Crowe and noted that he "continues to be disabled . . . because of asthmatic bronchitis with intolerance to hyperventilation exercise, and fumes and dusts of all kinds."/9 Similarly, in June 1988, a Dr. K. R. Crabtree, a family practice physician, examined and diagnosed Crowe with an upper respiratory allergy, infection, acute and chronic bronchitis and asthma, as well as opined that "he is disabled as a result of th[ese] problem[s] and will remain so for the remainder of his life." But we note that neither Dr. Krock nor Dr. Crabtree, in their record entries, diagnosed Crowe as suffering from pneumoconiosis./10

From 1988 through 1990, Crowe was admitted to the Monroe County Medical Center in Tompkinsville, Kentucky on four occasions for asthmatic bronchitis. On October 19, 1988 and on June 29, 1989, Crowe was also admitted to the hospital and treated for "acute asthmatic bronchitis."/11 Crowe was confined in the hospital again on July 21, 1990 for shortness of breath and upon discharge, was diagnosed with asthmatic bronchitis and chronic obstructive pulmonary disease. His next trip to the Tompkinsville hospital during this period occurred on September 1, 1990,/12 and he was treated for and diagnosed with asthmatic bronchitis, as well as an upper respiratory infection and depression./13

Furthermore, after the filing of Crowe's second claim for black lung benefits in 1990, the DOL arranged to have Crowe undergo a variety of tests, including a chest x-ray. A chest x-ray taken of Crowe on August 31, 1990 was read by Drs. Kirk Hippensteel and James Castle, both board certified "B-readers" (doctors who have demonstrated proficiency in evaluating chest x-rays for black lung disease, see 20 C.F.R. sec. 718.202(a)(1)(ii)(E)), and they concluded that the chest x-ray was negative for black lung disease. However, in October 1990, Dr. Glen Baker, also a certified B-reader, took another chest x-ray of Crowe and found "abnormalities consistent with pneumoconiosis." Dr. Baker discovered small "opacities" (spots) of widths up to about 3 millimeters in Crowe's middle and lower areas of his left and right lungs./14

While it seems clear that there exists significant evidence of Crowe's debilitating lung condition,/15 because Sahara Coal is

inapplicable to the specific and unique facts of this case, we are convinced that the parties involved and the interests of justice would best be served if the ALJ made more detailed findings of fact based on the evidence presented after the parties have the opportunity to argue the merits of the petitioner's 1990 claim for black lung benefits. We are also inclined to remand the case because the ALJ previously flip-flopped on the same question of whether Crowe sufficiently demonstrated that he is suffering from pneumoconiosis, and relied on a cursory (and incorrect) analysis of the law. Accordingly, we grant the petition for review and remand the case to the ALJ with instructions that he address the merits of the petitioner's 1990 claim for black lung benefits. Because the petitioner's 1990 claim for black lung benefits is more than a decade old, we encourage the ALJ to proceed as expeditiously as possible on remand.

The petition for review is GRANTED, and the petition is REMANDED to the ALJ for proceedings consistent with this opinion./16

/1 We note that due to his condition, the petitioner applied for and was granted social security disability benefits in 1983.

/2 The Review Board's remand instructed the ALJ to consider whether "Dr. Krock may have diagnosed pneumoconiosis."

/3 Because Crowe's allegations regarding his illiteracy and the misleading information provided by the social security office are unrefuted, we accept them as true on appeal.

/4 In fact, the Review Board even noted that the ALJ erred in interpreting 20 C.F.R. sec. 725.409(b), but concluded that the ALJ's "misinterpretation of this regulation is harmless error, however, in view of our ultimate affirmance of the [ALJ's] denial of benefits."

/5 Although this court appointed counsel to represent the petitioner on appeal, it is important to note that during all prior proceedings before the DOL, ALJ and the Review Board, Crowe proceeded without counsel.

/6 Our holding today is limited to the specific and unique facts of this case and in no way overrules Sahara Coal.

/7 20 C.F.R. sec. 727.203(a) provides, in relevant part:

A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, . . . arising out of that employment, if one of the following medical requirements is met:

(1)  A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis . . . ;

(2)  Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease . . . ;

(3)  Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood . . . ;

(4)  Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment . . . .

Because Crowe worked in a coal mine for only 5 years, he is not entitled to the benefit of this presumption.

/8 Dr. Krock examined Crowe ten months later in May 1981, and again concluded that "he continues to have asthmatic bronchitis with [an] incapacitating cough that has made it impossible for him to resume mining or other gainful employment; he has more evidence of wheeze and airway obstruction today than on any previous visit."

/9 When Dr. Krock examined Crowe on December 16, 1982, he reiterated his finding that the petitioner "is disabled and unable to work due to his chronic and intractable cough associated with abnormal airways reactivity."

/10 Nonetheless, the ALJ concluded that Dr. Krock did positively attribute claimant's total disability to his coal mine employment [on August 27, 1980], while Drs. Crabtree and Small did not make that connection. None of the other hospital reports contains an opinion expressly relating claimant's coal dust exposure to his total respiratory disability. I do note, however, that Dr. Baker only diagnosed mild impairment, but he attributed that impairment to pneumoconiosis. I also find it significant that the reports of Drs. Small and Crabtree, as well as the hospital reports, do not expressly contradict claimant's respiratory disability to his coal dust exposure. Indeed, none of the reports rules out coal dust exposure as the cause

of the claimant's respiratory disability. Because of Dr. Krock's positive conclusion, and no contradictory evidence, I find that the claimant has established that pneumoconiosis is a contributing cause of his respiratory impairment. (Emphasis added).

/11 Crowe was transferred to The Medical Center at Bowling Green on June 29, 1989 for treatment of his "respiratory distress."

/12 Upon his discharge from the Tompkinsville hospital, Crowe was transferred to the T.J. Samson Community Hospital on September 7, 1990. In the discharge summary dated September 19, 1990, a Dr. Karen Small diagnosed Crowe with "asthma with chronic obstructive pulmonary disease" and "candida bronchitis."

/13  These same ailments would force Crowe to be admitted to a hospital as a patient on four other occasions from 1991 through January 1992.

/14 We note, however, that Drs. Jay Gordenson and Nicholas Sargent, both certified B-readers and also board certified radiologists, disagreed with Dr. Baker's findings. Dr. Gordenson re-read the chest x-ray and found no "parenchymal" or "pleural abnormalities consistent with pneumoconiosis." Dr. Sargent also re-read the chest x-ray and similarly found it "completely negative" for pneumoconiosis.

/15 Indeed, the ALJ made the alternative finding that "should these conclusions [(based on Sahara Coal)] prove to be incorrect and that the merits of Mr. Crowe's second claim must be addressed, then I would conclude that . . . [the evidence] is sufficient to establish total disability due to pneumoconiosis arising from coal mine employment." (Emphasis added).

/16 In light of our above holding, we need not reach the petitioner's claims that the Review Board "failed to engage in reasoned decisionmaking" and "exceeded its statutory authority" in affirming the ALJ's denial of black lung benefits.