**AMAX COAL COMPANY, Petitioner,**

**v.**

**Ruby BEASLEY, Widow of Robert V. Beasley, and Director, Office of Workers' Compensation Programs, U.S. Department of Labor, Respondents.**

**No. 90–1820.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 28, 1992.

Decided Feb. 19, 1992.

As Amended Feb. 21, 1992.

W.C. Blanton (argued), Terri A. Czajka, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for petitioner.

Harold B. Culley, Jr. (argued), Raleigh, Ill., Barbara J. Johnson, Donald S. Shire, Sol. Gen., Cheryl Blair–Kijewski, Russell A. Shultis (argued), Dept. of Labor, Office of the Solicitor, Maria Lisowski, Benefits Review Bd., Dept. of Labor, Sylvia T. Kaser, Dept. of Labor, Black Lung Div., Carla Chapman, Maria Lisowski, Benefits Review Bd., Dept. of Labor, Washington, D.C., for respondents.

Before BAUER, Chief Judge, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The Amax Coal Company (Amax) seeks review of an Order of the Benefits Review Board of the United States Department of Labor (BRB) granting benefits to Robert Beasley pursuant to the provisions of the Black Lung Benefits Act. 30 U.S.C. § 901 *et seq.* The BRB affirmed the decision of the Administrative Law Judge (ALJ), who found that Amax had failed to rebut the presumption of total disability raised by the claimant. We reverse.

## I. FACTS AND PRIOR PROCEEDINGS

Mr. Beasley worked as a coal miner for thirty-six years. During his final twenty years he worked as a truck driver, transporting coal from the pit to the tipple. During most of his adult life Mr. Beasley smoked half a pack of cigarettes each day, totalling sixty "pack years." Mr. Beasley also had many problems with his health, including a heart condition, diabetes, and breathing difficulties. He filed this claim in May of 1977, the same month he retired from Amax.[1]

The ALJ approved Beasley's claim in 1985, finding that Beasley had successfully invoked the interim presumption of total disability due to coal worker's pneumoconiosis (CWP) on the basis of chest X-rays and a pulmonary function study. 20 C.F.R. § 727.203(a)(1) and (2).[2] Although this presumption is rebuttable under § 727.203(b)(1) through (4), the ALJ found no rebuttal because the evidence did not show that Beasley performed or was able to perform comparable work after he left Amax, 20 C.F.R. § 727.203(b)(1) and (2); because the medical evidence did not preclude a causal relationship between Beasley's mining and disability, 20 C.F.R. § 727.203(b)(3); and because the evidence failed to show that the miner did not have pneumoconiosis. 20 C.F.R. § 727.203(b)(4). The key medical evidence included the opinion of Dr. Parviz Sanjabi, who said that Beasley might have CWP, though other ailments accounted for most of his problems, and Dr. Peter Tuteur, who said that Beasley did not have CWP, and even if he did it would be inconsequential in light of his other infirmities. The ALJ gave more weight to

Dr. Sanjabi's opinion because only he had actually examined the claimant, whereas Dr. Tuteur relied on medical records and test results. The BRB affirmed the ALJ on this point, but still vacated the decision because it failed to discuss aspects of Dr. Sanjabi's deposition pointing toward rebuttal.

On remand the ALJ awarded benefits again, holding that Dr. Sanjabi's deposition testimony, while stating that smoking and heart problems were the major contributors to Beasley's disability, did not rule out the possibility that CWP had played some minor role in his lung impairment. The BRB affirmed, deferring to the ALJ's broad discretion in evaluating medical reports and weighing evidence.

## II. DISCUSSION

■ To make out a claim for black lung benefits, a miner must establish: (1) total disability, (2) caused at least in part by pneumoconiosis, (3) that arose out of coal mine employment. *Mullins Coal Co. v. Director, OWCP,* 484 U.S. 135, 141, 108 S.Ct. 427, 431, 98 L.Ed.2d 450 (1987). These three elements are presumed if the miner has ten years of qualifying coal mine experience and meets one of the criteria in 20 C.F.R. § 727.203(a)(1) through (5). Petitioner does not dispute that Beasley has invoked this "interim presumption" under § 727.203(a)(1) and (2), as he was employed as a miner for over ten years and had qualifying X-rays and a pulmonary function study. Petitioner does claim, however, that it successfully rebutted this presumption under § 727.203(b)(3) because the

---

**1.** Mr. Beasley died of a probable acute myocardial infarction in October of 1978. His widow, Ruby Beasley, filed her application for survivor's benefits on March 27, 1979. Her claim has not yet been adjudicated because ALJ Stewart approved Mr. Beasley's claim. *See* 20 C.F.R. § 725.201.

Because Mr. Beasley filed his claim before March 1, 1978, the effective date of the Black Lung Benefits Reform Act of 1977, and because the claim was initially administratively denied, this case is governed by the regulations in 20 C.F.R. part 727. *See* 30 U.S.C. § 945(b).

**2.** 20 C.F.R. § 727.203(a) provides, in part:

(a) *Establishing Interim Presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, ... arising out of that employment, if one of the following medical requirements is met:

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis ...;

(2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease....

Mr. Beasley had two qualifying X-rays and a qualifying ventilatory study.

medical testimony, especially Dr. Tuteur's, showed that "the total disability or death did not arise in whole or in part from coal mine employment."[3] Additionally, Amax contends that the ALJ erred in giving controlling weight to Dr. Sanjabi's opinion while discounting Dr. Tuteur's simply because the former actually examined Beasley in person.

◼ Although this is an appeal from the decision of the BRB, we actually review the decision of the ALJ, asking whether it is supported by substantial evidence, is in accord with the law, and is rational. *Peabody Coal Co. v. Helms*, 859 F.2d 486, 489 (7th Cir.1988). Substantial evidence is "such relevant evidence as a rational mind might accept as adequate to support a conclusion." *Id.* Further, "a reviewing body may not set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis." *Smith v. Director, OWCP*, 843 F.2d 1053, 1057 (7th Cir.1988).

◼ Once a black lung claimant establishes a presumption of total disability and entitlement to benefits an employer may rebut the presumption by, among other things, showing that CWP was not a "contributing cause" of the claimant's disability. *Wetherill v. Director, OWCP*, 812 F.2d 376, 380 (7th Cir.1987); 20 C.F.R. § 727.203(b)(3). A "contributing cause" is a necessary, though not necessarily sufficient, cause of the miner's disability. *Compton v. Inland Steel Coal Co.*, 933 F.2d 477, 480–81 (7th Cir.1991); *Hawkins v. Director, OWCP*, 907 F.2d 697, 704 (7th Cir.1990); *Shelton v. Director, OWCP*, 899 F.2d 690, 693 (7th Cir.1990). Thus, an employer can rebut the presumption of disability due to CWP by showing, for example, that a claimant's smoking would have disabled him by itself, even if he had spent his life as an accountant rather than a miner. Though we have said in the past that rebuttal is achieved only by showing that CWP "was in no way a factor" in the miner's

disability, *Freeman United Coal Mining Co. v. Benefits Review Board*, 919 F.2d 451, 453 (7th Cir.1990), this does not mean that the employer must prove its rebuttal case beyond a reasonable doubt. Rather, the employer need only rule out CWP as a contributing cause by a preponderance of the evidence. *Penn Allegheny Coal Co. v. Mercatell*, 878 F.2d 106, 110 (3d Cir.1989); *Warman v. Pittsburg & Midway Coal Mining Co.*, 839 F.2d 257, 263 (6th Cir. 1988) (Edwards, Jr., J., dissenting on other grounds).

◼ Amax contends that the medical evidence shows Beasley's exposure to coal dust was not a contributing cause of his disability, and that the ALJ's finding of no rebuttal was therefore erroneous. Much of Amax's argument rests on the opinion of Dr. Tuteur. But the ALJ gave little or no weight to Dr. Tuteur's opinion, stating, "I nevertheless give greater weight to Dr. Sanjabi's opinion because he is an examining physician whereas Dr. Tuteur merely reviewed reports forwarded to him." Decision and Order, June 26, 1985, at 12. This was error. Doctor Tuteur was a qualified expert (a clinical professor at a well-known medical school), and his opinion was consistent with Dr. Sanjabi's, both agreeing that Beasley's cardiac condition and smoking were the real causes of his trouble. ALJs have discretion in weighing medical evidence, *Smith*, 843 F.2d 1053, 1057 (7th Cir.1988), but they are not free to disregard uncontradicted medical opinions. *See Wetherill*, 812 F.2d at 382 (ALJ "must consider all relevant medical evidence, cannot substitute his expertise for that of a qualified physician, and, absent countervailing clinical evidence or a valid legal basis for doing so, cannot simply disregard the medical conclusions of a qualified physician."). Moreover, ALJs cannot afford more weight to an examining physician's opinion *solely* because that doctor personally treated the claimant. *Peabody Coal Co. v. Helms*, 901 F.2d 571, 573 (7th Cir.1990).

◼ We need not remand for a re-weighing of the evidence, however, because Dr.

---

**3.** The parties devoted large portions of their initial briefs to the question of whether the rebuttal provision of § 727.203(b)(3) could be used at all. This provision was upheld by the

Supreme Court in *Pauley v. BethEnergy Mines, Inc.*, —— U.S. ——, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991).

Sanjabi's opinion alone was enough to establish rebuttal. Doctor Sanjabi examined Beasley at the Department of Labor's request, diagnosing aortic stenosis, possible mitral insufficiency, hypertension, chronic obstructive pulmonary disease, and CWP. More importantly, however, he wrote the following in the "Remarks" section of his report: "It is conceivable that he has CWP but the cigarette smoking had (sic) a major contributory factor to his lung problem no doubt, and a good portion of his symptoms can also be caused by the cardiovascular condition." Similarly, during his deposition the doctor engaged in the following colloquy:

Q: Now, ... with the minimal degree of CWP which you have commented on here today, and with the history of sixty pack years of cigarette smoking, and the notations or the noted differences between focal emphysema and centrilobular emphysema and their relations to one another, can't you state that, in fact, this man's reduction (sic) pulmonary status is due to the fact that he was a long-time heavy cigarette smoker?

A: Yeah, I could very closely, very, very, very closely guess that.

Q: And in fact—

A: If I had to bet my money, I would bet on this.

Q: In fact, that would be within the realm of reasonable medical certainty, would it not?

A: Yeah, I would say so, yes.

Sanjabi Dep., EX–6, at 41–42. It is difficult to imagine a more convincing statement that the claimant's exposure to coal dust had little or nothing to do with his disability. True, Dr. Sanjabi could not completely rule out CWP as a possible factor in Beasley's condition, but it was improper for the ALJ to use this "equivocation" as a basis for finding no rebuttal. *Pancake v. Amax Coal Co.*, 858 F.2d 1250, 1255 (7th Cir.1988) ("[A]n ALJ may not selectively analyze the record to reach a desired outcome."). First, as mentioned earlier, the standard on rebuttal is not proof beyond a reasonable doubt, but proof by a preponderance of the evidence. Doctor Sanjabi's "reasonable medical certainty" statement met this standard. Second, we do not require utter certainty in medical opinions, nor would we expect dogmatic diagnoses from a careful scientist. Doctor Sanjabi's caution should not have been used as an excuse to award benefits. Third, Dr. Sanjabi stated that he did not have enough data to distinguish between the effects of CWP and smoking. This is significantly different than saying that CWP was a factor in Beasley's disability. Finally, there was no clear proof that the claimant actually had CWP, as Dr. Sanjabi could only describe it as a possibility.

## III. CONCLUSION

As we review ALJ's ruling under the substantial evidence standard, we must take into account any evidence in the record fairly detracting from that decision, and we must reverse where we "cannot conscientiously find that the evidence supporting that decision is substantial." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951). This is such a case. Doctor Tuteur found no CWP and, when it came time to bet, Dr. Sanjabi sided with cigarette smoking as the cause of Beasley's woes. The medical evidence here uniformly points toward rebuttal, and therefore the decision of the BRB granting benefits is

REVERSED.