4 F.3d 996
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
FREEMAN UNITED COAL MINING COMPANY, Petitioner,
v.
OFFICE OF WORKERS' COMPENSATION PROGRAM, Respondent.
 No. 92-2390.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 16, 1993.*
Decided Sept. 2, 1993.
Rehearing and Suggestion for Rehearing In Banc
Denied Oct. 8, 1993.
 
 Before COFFEY, EASTERBROOK and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Freeman United Coal Mining Company ("Freeman Coal") petitions this court to review an award of black lung benefits to Lela Minton, the surviving spouse of John Minton, one of the company's former employees.
 
 
 2
 The Black Lung Act, 30 U.S.C. Secs. 901, et seq., authorizes the award of benefits in appropriate cases to surviving spouses of miners whose deaths were "due to" pneumoconiosis, or black lung disease. 30 U.S.C. Sec. 901(a). Lela Minton filed a claim for such benefits on December 24, 1985. The Department of Labor issued an Initial Determination awarding benefits, but the Labor Department's Deputy Commissioner later notified Minton that, based on new medical evidence submitted by Freeman Coal, the award had been reviewed and reversed.
 
 
 3
 After the Office of Worker's Compensation denied her benefits claim, Lela Minton sought a ruling from an Administrative Law Judge. The Administrative Law Judge ("ALJ") issued a Decision and Order awarding benefits, and on April 15, 1992, the Benefits Review Board affirmed.
 
 
 4
 We reverse.
 
 I. Background
 
 5
 John Minton worked in the coal mines for 33 years before arthritis and heart disease forced him to retire from the Freeman United Coal Mining Co. at the age of 60. Two years later, on November 10, 1985, Minton was admitted to Herrin Hospital in Herrin, Illinois, for a five-day stay under the care of his treating physician, Dr. Basil Moskoff. Herrin Hospital records reflect that Minton had been under treatment for high blood pressure and coronary artery disease for about seven or eight years, had developed angina in the last two years, was obese, and had smoked one and a half packs of cigarettes a day for at least 38 years.
 
 
 6
 Dr. Moskoff's diagnosis of Minton upon discharge was "acute bronchitis, superimposed on chronic obstructive pulmonary disease with pneumoconiosis; hypertensive cardiovascular disease with cardiac decompensation, pulmonary edema; diabetes mellitus, insulin independent; osteoarthritis; exogenous obesity."
 
 
 7
 Minton died of complete cardiac arrest on December 8, 1985, less than a month after being released from the hospital. Dr. Moskoff entered the following information on the death certificate as the cause of death: "Cardiac arrest due to hypertension; cardiovascular disease and diabetes mellitus; chronic obstructive pulmonary disease with pneumoconiosis." No autopsy was performed.
 
 
 8
 Dr. Moskoff later sent the following letters (3) to the Department of Labor regarding John Minton's death:
 
 1) March 5, 1986
 
 9
 "Please be advised that this patient was forced to retire early because of marked exertional dyspnea and his arthritis symptoms. As with patients with chronic obstructive pulmonary disease and Hypertensive Cardiovascular disease, he developed cardiac arrhythmia with frequent PVC's and he died 12/08/85 with cardiac arrest. I am sure that his chronic obstructive pulmonary disease with pneumoconiosis was a very definite contributing factor in his death.
 
 
 10
 "Please find enclosed a copy of Mr. Minton's EKG from 1981, and his last EKG from 11-14-85. You already have his pulmonary function studies from exams that you have requested and I do not have the results of those studies."[1]
 
 2) June 9, 1986
 
 11
 "Mr. John Minton clinically had chronic obstructive pulmonary disease, with pneumoconiosis. He has X-rays at the Herrin Hospital, Herrin, IL.[2] If you need them you can call or write to them for the film since I do not have any in my office. Mr. Minton had a physical by Social Security/Disability and has had tests run by them but I do not have the results of those tests. I do not have any blood gases in my records."[3]
 
 3) January 17, 1987
 
 12
 "Please be advised that I was Mr. Minton's attending physician for a number of years, from 1958 until his death in 1985. It is my opinion that he suffered from chronic obstructive lung disease with pneumoconiosis. All test reports and X-rays[4] have previously been submitted to your office."
 
 
 13
 In marked contrast to Dr. Moskoff's repeated assertions that Minton suffered from pneumoconiosis, Dr. Sarah B. Long (a consulting physician for the Labor Department) reported, in her response to the DOL's "Request for a Reasoned Medical Opinion," that pneumoconiosis did not contribute to John Minton's death, and that the only objective evidence was that Minton died of cardiac disease.
 
 
 14
 Finally, the record contains readings of five X-rays that were taken of John Minton's chest between 1981-1985. Each X-ray was read by two different readers. The first X-ray, taken on December 5, 1981, was read as negative for pneumoconiosis by both Dr. David L. Sloan and Dr. J.S. Gordonson (a B-reader[5]). The second X-ray, taken on January 10, 1984, received one negative and one positive reading. The first reader, Dr. E.N. Sargent, commented that this X-ray was of poor technical quality and contained no convincing evidence of pneumoconiosis. Dr. Thomas R. Marshall (a B-reader) also read and interpreted this X-ray as being barely positive "(1/1)" for pneumoconiosis.[6]
 
 
 15
 The most recent X-rays (3) were taken during the month of November in 1985 on the 10th, 12th, and 15th. Each X-ray was read and interpreted by Dr. Sloan and by Dr. Cole (a B-reader). Neither physician read any of these X-rays as positive for pneumoconiosis.
 
 
 16
 In sum, one X-ray reading out of ten established nothing but a mere "possible positive" reading and interpretation for pneumoconiosis.[7]
 
 II. Issue
 
 17
 Although this is an appeal from the Benefits Review Board's affirmance of the ALJ's decision to award benefits, we review the ALJ decision itself "to decide if the ALJ's decision is supported by substantial evidence, defined as 'such relevant evidence as a rational mind might accept as adequate to support a decision.' " Amax Coal Company v. Director, OWCP, 993 F.2d 600, 602 (7th Cir.1993) (quoting Amax Coal v. Beasley, 957 F.2d 324, 327 (7th Cir.1992)).
 
 III. The Decisions Below
 
 18
 A miner's death will be considered due to pneumoconiosis:
 
 
 19
 "(1) Where competent medical evidence establishes that the miner's death was due to pneumoconiosis, or
 
 
 20
 "(2) Where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis, or
 
 
 21
 "(3) Where the presumption set forth at Sec. 718.304 is applicable." 20 C.F.R. Sec. 718.205(c).
 
 
 22
 In this case the ALJ ruled that, because there was no evidence that the miner suffered from complicated pneumoconiosis, the claimant was not entitled to the presumption of death due to pneumoconiosis found at 20 C.F.R. Sec. 718.304. The ALJ went on to find, however, that Dr. Moskoff's opinion was sufficient to establish that pneumoconiosis was a contributing factor in the miner's death under Sec. 718.205(c)(2). Dr. Long's contrary opinion did not, in the ALJ's view, "constitute a reasoned and documented medical opinion, since a later B reading by Dr. Marshall of the miner's X-ray dated October [sic] 10, 1984 was positive for pneumoconiosis...."
 
 
 23
 Finally, the ALJ noted that a miner with more than ten years of coal mine employment is entitled, under 20 C.F.R. Sec. 718.203(b), to a rebuttable presumption that his pneumoconiosis arose out of that employment, and since the miner (Minton) in this case had 33 years of coal mine employment, the ALJ found that the claimant was entitled to the presumption. Since Dr. Long did not believe the miner had pneumoconiosis, she failed to address the causation issue in her report. The ALJ therefore concluded that the 10-year employment presumption stood unrebutted.
 
 
 24
 On appeal, the Benefits Review Board agreed that there was sufficient evidence for the ALJ to have determined that pneumoconiosis was a substantially contributing cause of the miner's death. "We hold," the board wrote in its unpublished opinion, "that the administrative law judge, within a proper exercise of his discretion, relied on the death certificate, signed by Dr. Moskoff ... who was aware of the miner's condition based on his observations of the miner in his capacity as the miner's treating physician ... and explanatory reports submitted by Dr. Moskoff."
 
 
 25
 In the board's view, the ALJ also properly found that Dr. Long's report failed to "constitute a reasoned and documented opinion as it was based on an erroneous premise. The Administrative Law Judge, within his discretion, permissibly found that Dr. Long did not have all the relevant evidence at the time of her opinion and that the underlying basis of this opinion, that the miner did not have pneumoconiosis, to be incorrect and the opinion entitled to less weight."
 
 IV. Discussion
 
 26
 The ALJ reasoned that the opinion of Dr. Moskoff was supported by the objective medical evidence because he had "treated the miner for many years, and diagnosed him with pneumoconiosis, a diagnosis which is supported by the X-ray evidence." In contrast, the ALJ wrote, "since Dr. Long did not believe that the miner had pneumoconiosis, her opinion that it did not contribute to his death receives less weight, as it is not supported by the objective medical evidence."
 
 
 27
 Freeman Coal argues to this court that the ALJ erred in crediting Dr. Moskoff's opinion over Dr. Long's. According to the appellant, Dr. Long's report was a reasoned and documented medical opinion while Dr. Moskoff's opinion was not.
 
 
 28
 A "reasoned medical opinion" rests on documentation adequate to support the physician's conclusions. Miglorini v. Director, OWCP, 898 F.2d 1292, 1295 (7th Cir.1990). In this case the record reveals that when Dr. Long reported that Minton died from cardiac disease and not from pneumoconiosis, she explained the basis for her opinion with specific and well-reasoned references to the underlying documentation. She explained that an X-ray reading by a "B reader" was negative for pneumoconiosis, and that the miner was hospitalized for asthmatic bronchitis and congestive heart failure in November 1985. She noted that although there were findings for chronic, obstructive pulmonary disease, there were no specific findings of pneumoconiosis. She further pointed out that there was also significant evidence of cardiac disease: the miner had congestive heart failure, and his EKG showed left bundle branch block, which, Dr. Long explained, is an indication of organic heart disease. Finally, she noted that on December 8, 1985, Minton had a cardiac arrest and was dead on arrival at the hospital. From our reading of the record, we are convinced that her opinion was based on adequate documentation and reasoning.
 
 
 29
 The ALJ's only reason for ruling otherwise is that when Dr. Long issued her opinion in July 1986 she did not have before her the lone 1987 positive B-reading of the miner's January 10, 1984, X-ray. It is evident that, when Dr. Long thoroughly examined the medical evidence underlying the patient's medical case history, including his previous hospitalization treatment, the "possible positive" reading of one of the miner's older X-rays had not yet been made. But it is also quite obvious that only one out of the ten readings and interpretations was classified as "barely positive," and furthermore the three most recent X-rays taken at Herrin Hospital shortly before Minton's death were all read as showing no evidence of pneumoconiosis. We hold that the fact that only one out of ten X-ray readings was (barely) positive supports Dr. Long's opinion that the miner did not suffer from pneumoconiosis.
 
 
 30
 This record displays most eloquently that, in contrast to Dr. Long's opinion, Dr. Moskoff's opinion that the miner's pneumoconiosis was a contributing factor in his death was not based on any of the usual and accepted medical tests that physicians rely upon in rendering such opinions. A physician may determine the existence of pneumoconiosis despite a negative X-ray, but "[a]ny such finding shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion." 20 C.F.R. Sec. 718.202(a)(4) (emphasis added).
 
 
 31
 For reasons unknown, Dr. Moskoff failed to rely and make use of the usually approved medical tests and criteria employed when determining whether or not a patient is suffering from pneumoconiosis, namely the "pulmonary function tests, including spirometry, blood gas, x-rays[8] and other diagnostic and pulmonary testing devices" with which one can "conclusively differentiate and determine that a miner is suffering from black lung disease rather that a myriad of other unrelated respiratory problems such as emphysema, asthma, tuberculosis, pneumonia, chronic bronchitis or asbestosis to mention a few." Collins v. Director, OWCP, 932 F.2d 1191, 1194 (7th Cir.1991) (Coffey, J., concurring).
 
 
 32
 In his January 17, 1987, letter to the Labor Department, Dr. Moskoff in an attempt to support his opinion wrote:
 
 
 33
 "Please be advised that I was Mr. Minton's attending physician for a number of years, from 1958 until his death in 1985. It is my opinion that he suffered from chronic obstructive lung disease with pneumoconiosis. All test reports and X-rays have previously been submitted to your office." Obviously, this falls short of the "reasoned opinion" requirement of 20 C.F.R. Sec. 718.202(a)(4).
 
 
 34
 The ALJ found that Dr. Moskoff's opinion was reasoned because 1) one of the miner's five X-rays submitted was subsequently read and interpreted to be "barely positive" for presence of pneumoconiosis by one of two readers, and 2) Dr. Moskoff was the treating physician. But, as previously explained, Dr. Moskoff did not and could not have relied on the disputed positive reading of the January 1984 X-ray because that reading did not exist at the time he rendered his opinion on January 17, 1987. The only remaining support for Dr. Moskoff's opinion, then, is his status as the treating physician, and it is clear that this lonely prop cannot bear so much weight. We have stated that "... it is irrational to prefer the opinion of a treating physician, who is often not a specialist, over the opinion of a non-treating specialist solely because one physician is the treating physician. A specialist consulted by the DOL in a black lung case obviously will have particularized knowledge of pulmonary disease. The same cannot be said of a non-specialist treating physician." Peabody Coal Co. v. Director, 972 F.2d 178, 182 (7th Cir.1992). Indeed, we have described such conclusory writing as those dictated by Dr. Moskoff in this case as "the sort of thing that treating physicians frequently write as an accommodation to their patients." Peabody Coal Co. v. Helms, 901 F.2d 571, 574 (7th Cir.1990).
 
 
 35
 Similarly, we have warned against "the well-known propensity of personal physicians to go the extra step in helping their patients obtain benefits for a medical condition," DeFrancesco v. Bowen, 867 F.2d 1040, 1043 (7th Cir.1989), and observed that "the patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." Stephens v. Heckler, 766 F.2d 284, 289 (1985).
 
 
 36
 Although this court will not reweigh medical evidence, we will "reverse the ALJ's determination when we find that the opinion departs from the information available so as to 'offend reason.' " Freeman United Coal Mining Co. v. Cooper, 965 F.2d 443, 448 (7th Cir.1992) (citing Peabody Coal v. Director, OWCP, 778 F.2d 358, 363 (7th Cir.1985)). We hold that the ALJ's decision to credit Dr. Moskoff's opinion over Dr. Long's opinion does make such a departure from the available information in this case.
 
 
 37
 In contrast to Dr. Long's opinion, which was well-documented and reasoned, and because Dr. Moskoff's opinion was unsupported and conclusory it falls short of qualifying as a "reasoned medical judgment" under 20 C.F.R. Sec. 718.202(a)(4). See Freeman United Coal Mining Co. v. Cooper, 965 F.2d 443, 448-449 (7th Cir.1992). In this case, as in Freeman Coal v. Cooper, "if [the treating physician's] opinion did not provide a reasonable basis to conclude that [the miner] suffered from pneumoconiosis, it could not have provided a reasonable basis upon which to conclude that pneumoconiosis substantially contributed to his death." Freeman Coal, 965 F.2d at 449-450.
 
 
 38
 If there is an absence of pneumoconiosis findings on the part of four of five consulting radiologists in nine out of ten x-ray films, certainly it is reasonable to believe that pneumoconiosis neither contributed to nor hastened the miner's death.
 
 
 39
 The ALJ erred in ruling that Dr. Long's opinion was unreasoned, and he erred in finding that Dr. Moskoff's opinion was reasoned. Because we hold that the ALJ's decision is not supported by substantial evidence, we REVERSE the award of benefits.
 
 
 
 *
 On April 8, 1993, this court granted the parties' joint motion to waive oral argument
 
 
 [1]
 The pulmonary function studies referred to in Dr. Moskoff's letter of 3/5/86 are not part of the record
 
 
 [2]
 These X-rays from Herrin Hospital when read all proved to be negative for pneumoconiosis
 
 
 [3]
 Although Dr. Moskoff did refer to blood-gas tests in Minton's Hospital Discharge Summary of November 26, 1985, no such blood-gas test results appear in the record
 
 
 [4]
 All of the X-rays that had been submitted to the Department of Labor by this date (January 17, 1987) had been read as negative for pneumoconiosis
 
 
 [5]
 A "Certified 'B' reader" is board certified as a physician specializing in radiology and as having a demonstrated proficiency in evaluating chest roentgenograms for roentgenographic quality, and in interpreting chest roentgenograms for pneumoconiosis and other diseases. He or she is certified after passing a proficiency examination given by the Appalachian Laboratory for Occupational Safety and Health. See 20 C.F.R. Sec. 718.202(a)(1)(E); 42 CFR 37.51(b)(2)
 
 
 [6]
 The claimant does not dispute Freeman Coal's characterization of this reading as "barely positive."
 
 
 [7]
 A review of the record and the American Board of Medical Specialties (ABMS) Directory of Board Certified Medical Specialists indicates that, of the five radiologists who reviewed the miner's X-rays, all except Dr. Sloan, who is a radiologist at Herrin Hospital, are independent consultants retained by the parties. Dr. Marshall is in private practice, while Dr. Sargent and Dr. Gordonson both hold academic positions at the Los Angeles County-University of Southern California Medical Center. The ABMS Directory reports that Dr. Cole is now retired
 
 
 [8]
 In this case, Dr. Moskoff did not rely on the lone positive X-ray reading. The record confirms that Dr. Moskoff wrote the last of his opinion letters on January 17, 1987, ten days before Dr. Marshall's January 27 positive reading. (The record also reveals that, because the claimant refused an autopsy, Dr. Moskoff did not even have the benefit of an autopsy report.)