FREEMAN UNITED COAL MINING COMPANY, Petitioner,

v.

OFFICE OF WORKERS' COMPENSATION PROGRAM, Respondent.

No. 93–1089.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1993.

Decided March 29, 1994.

Barry S. Hyman (argued), Kathryn S. Matkov, Gould & Ratner, Chicago, IL, for petitioner.

* Hon. Donald P. Lay, Circuit Judge for the Eighth Circuit, is sitting by designation.

Eileen M. McCarthy (argued), Dept. of Labor, Appellate Litigation, Marta Kusic, Dept. of Labor, Office of Sol., Washington, DC, John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, IL, for respondent Office of Workers' Compensation Programs.

Harold B. Culley, Jr. (argued), Raleigh, IL, for respondent Robert Forsythe.

Lisa L. Lahrman, Benefits Review Bd., Executive Counsel, Clerk of Bd., Washington, DC, for party-in-interest Benefits Review Bd.

Before LAY,* RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

Freeman United Coal Mining Company ("Freeman") petitions this court for review of a final decision of the United States Department of Labor Review Board (the Board), which affirmed an award of disability benefits under the Black Lung Benefits Act (the Act), 30 U.S.C. § 901, *et seq.* For the following reasons, we deny the petition and affirm the award.

## I.

The claimant in this case, Robert Forsythe ("Forsythe"), worked in a variety of coal mining jobs at Freeman for 30 years. During his last 20 years, Forsythe worked as a slope belt operator. This was an above-ground, push-button operation, which required Forsythe to monitor the movement of coal along a conveyor belt. Occasionally, Forsythe would have to clean up spills that occurred along the belt, as well as perform other periodic maintenance. Other than this, however, Forsythe's usual coal mining work was characterized by the ALJ as light in nature. Forsythe worked in this position until November, 1977, when he suffered a major heart attack. After his heart attack, Forsythe left Freeman.

On January 4, 1978, Forsythe filed an application with the Department of Labor ("DOL") for benefits under Part C of the Act[1] due to his disabling condition. The

1. "Part C" claims are those filed on or after July 1, 1973. *See Mullins Coal Co., Inc. of Va. v.*

DOL issued a notice of initial finding on July 15, 1980, in which it awarded benefits to Forsythe. Freeman contested liability and the matter was submitted to an Administrative Law Judge (ALJ) for a formal hearing, which was not held until July 18, 1988. The reason for this eight-year delay stemmed from a dispute between Freeman and the DOL over whether liability for Forsythe's claim should be transferred to the DOL. Pursuant to the Black Lung Benefits Amendment of 1981, in certain circumstances liability for benefits may be transferred from the employer to a trust fund, known as the Black Lung Benefits Trust Fund, which is administered by the Director of the Office of Workers' Compensation Programs (Director) pursuant to regulations promulgated by the Secretary of Labor. The ALJ initially dismissed Freeman and transferred liability to the trust fund, thus returning the claim to the Director for payment. The Director appealed this transfer of liability to the Board, which, in 1985, vacated the ALJ's determination and found Freeman liable for any eventual award of benefits under the Act. *Forsythe v. Freeman United Min. Co.,* BRB No. 82–2098 BLA (Dec. 10, 1985). The Board then remanded Forsythe's claim to the ALJ for consideration on the merits.

Following remand, the ALJ heard evidence in support of Forsythe's claim that he was totally disabled due to pneumoconiosis arising out of coal mining employment. The ALJ found, and Freeman did not contest, that Forsythe was a coal miner within the meaning of the Act for thirty years ending in 1977. Because Forsythe had more than ten years of coal mining employment and his claim for benefits was filed before March 31, 1980, the ALJ analyzed his claim according to the interim regulations [2] set forth by the

Secretary of Labor in 20 C.F.R. § 727.203. Under these regulations, a miner can invoke an "interim" presumption of total disability due to pneumoconiosis if, in addition to establishing ten or more years of coal mine employment, he can meet one of four specific medical requirements: (1) chest x-rays establishing the presence of pneumoconiosis; (2) ventilatory studies establishing the presence of a respiratory or pulmonary disease (commonly referred to as "qualifying studies"); (3) blood gas studies demonstrating the presence of an impairment in the transfer of oxygen from the lungs into the blood; or (4) other medical evidence, including the documented opinion of a physician exercising reasonable medical judgment, establishing the presence of a totally disabling respiratory impairment. *See* 20 C.F.R. § 727.203(a)(1)–(4).

The record before the ALJ contained five x-rays and several rereadings of those same x-rays.[3] The ALJ recognized that, on balance, the majority of the x-ray rereadings were negative, but noted that "many of these negative rereadings are cumulative rereadings of the same x-ray." Order & Decision at 5. He also noted that "the record contains both positive and negative interpretations by B-readers."[4] *Id.* The ALJ further observed that the most recent x-ray was interpreted as positive by two of the three readers who interpreted it, and that "[b]oth of the positive readings were obtained as part of Employer's examination of the Claimant." *Id.* Having considered the x-ray evidence "in its entirety," *id.*, the ALJ concluded that "true doubt" existed whether the x-ray evidence was positive or negative for pneumoconiosis. *Id.* The ALJ then applied the "true doubt" rule, which gives the claimant the benefit of any doubt in invoking the pre-

---

*Director, OWCP,* 484 U.S. 135, 139, 108 S.Ct. 427, 429–30, 98 L.Ed.2d 450 (1987).

**2.** Interim regulations cover benefits claims filed between July 1, 1973 and April 1, 1980. *See Mullins,* 484 U.S. at 137–38, 108 S.Ct. at 428–29.

**3.** In black lung cases, medical evidence is initially submitted to the Director by the claimant and the employer. If the claim goes before an ALJ, all medical evidence that had been initially presented to the Director becomes part of the rec-

ord. *Mullins,* 484 U.S. at 144 n. 13, 108 S.Ct. at 432 n. 13.

**4.** A "B-reader" is " 'physician who has demonstrated proficiency in assessing and classifying X-ray evidence of pneumoconiosis by successful completion of an examination conducted by or on behalf of the Department of Health & Human Services.' " *Mullins,* 484 U.S. at 145 n. 16, 108 S.Ct. at 433 n. 16 (quoting *Consolidation Coal Co. v. Chubb,* 741 F.2d 968, 971 n. 2 (7th Cir. 1984)).

sumption of pneumoconiosis, and resolved the evidentiary doubt in Forsythe's favor.

The ALJ next considered whether Freeman could rebut the interim presumption pursuant to one of the rebuttal provisions listed in 20 C.F.R. § 727.203(b)(1)–(4). Freeman attempted to rebut the presumption by establishing that Forsythe was able to do his usual coal mine work or comparable and gainful work, § 727.203(b)(2), or, in the alternative, that Forsythe's total disability did not arise in whole or in part out of coal mine employment, § 727.203(b)(3). In making his rebuttal determinations, the ALJ relied largely upon the medical opinions of four physicians: Drs. Khan and Vest, who testified for Forsythe, and Drs. Sanjabi and Selby, who testified for Freeman. Turning first to examine rebuttal under (b)(2), the ALJ noted that the medical opinion evidence was in conflict. Drs. Khan and Vest stated that Forsythe was totally disabled as a result of a respiratory ailment which resulted from his coal mining employment. Drs. Sanjabi and Selby, on the other hand, were of the opinion that Forsythe's total disability was not attributable to any significant respiratory or pulmonary impairment, but rather, was the result of his acute heart disease and history of cigarette smoking. The ALJ ultimately gave more weight to Dr. Khan, Forsythe's treating physician, because "[he] is in the best position to comment on the overall nature of Claimant's conditions," and less to Dr. Selby because he "never examined Claimant but rather reviewed the medical evidence of record." Order & Decision at 7–8. Furthermore, the ALJ noted that neither Dr. Sanjabi nor Dr. Selby had sufficiently "rule[d] out the existence of at least some degree of respiratory or pulmonary impairment." *Id.* Additionally, the ALJ observed that although Drs. Sanjabi and Selby did not find Forsythe totally disabled due to a respiratory or pulmonary impairment, they both agreed that Forsythe was totally disabled as a result of his heart disease. Given Drs. Sanjabi's and Selby's concession of total disability from heart disease, the ALJ, apparently relying on *dicta* from this court's decision in *Wetherhill v. Director, OWCP*, 812 F.2d 376 (7th Cir. 1987), noted that this was enough to preclude a showing of rebuttal under subsection (b)(2).

*Id.* at 8. But the ALJ did not stop there. Instead, he went on to state that "the record contains no evidence that supports my [sic] finding that Claimant is able to perform comparable and gainful employment." *Id.* Based on all of the above, the ALJ concluded that Freeman could not establish rebuttal under § 727.203(b)(2).

In its analysis under § 727.203(b)(3), the ALJ, again relying on this court's decision in *Wetherhill*, pointed out that rebuttal under (b)(3) can be established only if the employer proves that the claimant's pneumoconiosis is not a contributing cause of his impairment. Using this standard, the ALJ observed that although Drs. Sanjabi and Selby both "attributed Claimant's impairments to his heart disease and cigarette smoking," neither "were able effectively to rule out the effects of Claimant's thirty-year history of coal mine employment on his overall condition." *Id.* As a result, the ALJ concluded that Freeman's evidence was insufficient to establish rebuttal under § 727.203(b)(3), and awarded Forsythe benefits under the Act.

Freeman appealed the ALJ's decision to the Board which, on April 30, 1992, affirmed the ALJ's conclusions both as to his application of the true doubt rule, as well as his finding no rebuttal under (b)(2) and (b)(3). On May 29, 1992, Freeman filed a timely motion for reconsideration with the Board pursuant to 33 U.S.C. § 921(b)(5) and 20 C.F.R. § 802.407(a). While this motion was pending, the Illinois Industrial Commission, on June 8, 1992, rendered its decision on a state workers' compensation claim Forsythe had filed while his claim under the Black Lung Act was pending. In its order, the Commission found that Forsythe had "sustained permanent partial disability to the extent of 25% under § 8(d)(2) of the [Illinois Workers' Compensation] Act due to his pneumoconiosis." *Forsythe v. Freeman United Coal Min. Co.*, No. 92 IIC 0598 (June 8, 1992). On July 21, 1992, Freeman filed a supplemental motion to its original motion for reconsideration, arguing that the decision of the Illinois Industrial Commission, finding Forsythe to be only partially disabled due to pneumoconiosis, should collaterally estop Forsythe from asserting that he is totally

disabled under the Act. On November 20, 1992, the Board, in a one-sentence order, denied Freeman's motion to reconsider. On January 14, 1993, Freeman filed this timely petition for review in this court pursuant to 33 U.S.C. § 921(c) and 20 C.F.R. § 802.406. *See Arch Mineral Corp. v. Office of Workers' Comp.*, 798 F.2d 215, 219 (7th Cir.1986) ("We hold that a petition for review is timely if filed within sixty days of the Board's denial of a timely motion for reconsideration."). Thus, we have jurisdiction, and now proceed to the merits of Freeman's petition.

## II.

In its petition, Freeman asserts three arguments, any one of which, in its opinion, warrants reversing the ALJ's award of benefits under the Act. First, Freeman argues that in denying its motion to reconsider, the Board committed legal error because it disregarded the preclusive effect of the Illinois Industrial Commission's finding that Forsythe was only partially disabled due to pneumoconiosis. Second, Freeman contends that the ALJ committed legal error when he used the "true doubt" rule to invoke the interim presumption of pneumoconiosis. Specifically, Freeman asserts that the true doubt rule violates section 7(c) of the Administrative Procedures Act, 5 U.S.C. § 556(d), because it allows an ALJ to award benefits to a claimant who fails to establish his entitlement by a preponderance of the evidence. Finally, Freeman maintains that, even if the ALJ properly invoked the interim presumption, the ALJ nevertheless erred when he found Freeman had not rebutted that presumption under § 727.203(b)(2) or (b)(4). In support of this last contention, Freeman argues that the ALJ acted irrationally in giving greater weight to the opinion of Dr. Khan simply because he was Forsythe's treating physician. Additionally, Freeman claims that the ALJ, in requiring Freeman to completely rule out the effects of Forsythe's coal mining employment on his overall conditions for purposes of § 727.203(b)(3), impermissibly raised the standard on rebuttal from proof by a preponderance of the evidence to proof beyond a reasonable doubt.

### A. Standard of Review

Generally, when reviewing a petition from a decision of the Board, our task is to review the decision of the ALJ, not of the Board. *Old Ben Coal Co. v. Battram*, 7 F.3d 1273, 1275 (7th Cir.1993). We must determine whether the ALJ's decision is rational, supported by substantial evidence, and consistent with the governing law. *Id.* We must thoroughly review the entire record, being careful not to redetermine the facts or substitute our judgment for that of the ALJ. *Id.* With respect to questions of law, however, our standard of review is *de novo*. *Shelton v. Old Ben Coal Co.*, 933 F.2d 504, 506 (7th Cir.1991). The Board has the same scope of review when it reviews the decisions of the ALJ. *Id.* Where we are asked to review a decision of the Board—as in this case, whether the Board erred in not granting preclusive effect to the findings of the Illinois Industrial Commission—then we must determine if the Board, not the ALJ, remained within its scope of review and whether it committed an error of law. *See Freeman United Coal Min. Co. v. Anderson*, 973 F.2d 514, 517 (7th Cir.1992); *Shelton*, 933 F.2d at 506. With these standards in mind, we now turn to Freeman's arguments.

### B. Collateral Estoppel

Freeman argues that the finding by the Illinois Industrial Commission that Forsythe is only partially disabled due to pneumoconiosis constitutes a complete bar to the ALJ's finding under the Act that Forsythe is totally disabled due to pneumoconiosis. Collateral estoppel, also known as issue preclusion, "refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action." *La Preferida v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 905 n. 7 (7th Cir.1990). To successfully invoke collateral estoppel, the party asserting it must establish the following four factors: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and (4) the

party against whom estoppel is invoked must be fully represented in the prior action. *La Preferida,* 914 F.2d at 905–06. Collateral estoppel is an affirmative defense, *id.* at 906, so the burden of establishing each of these elements lies with Freeman.

■ As pointed out by the Director in its brief, however, Freeman faces a more fundamental problem in attempting to assert collateral estoppel in this case. This is because the finding Freeman seeks to estop, the 1988 determination by the ALJ that Forsythe was totally disabled due to pneumoconiosis, was rendered three years *before* the decision of the Illinois Industrial Commission. This does appear to be dispositive for in such situations "the first judgment can scarcely be faulted for ignoring a second judgment that had not yet been entered." 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4404 at 30 (1981); *see also Howell v. Thomas,* 566 F.2d 469, 470 (5th Cir.1978), *cert. denied,* 439 U.S. 826, 99 S.Ct. 98, 58 L.Ed.2d 119 (1978) (outcome of second proceeding cannot constitute a bar to an earlier, already concluded proceeding); *Flood v. Harrington,* 532 F.2d 1248, 1250 (9th Cir.1976). The law of collateral estoppel is intended to protect the parties from the burden of relitigating the same issue following a final judgment and to promote judicial economy by preventing needless litigation. *See* Jack H. Friedenthal, Mary K. Kane, Arthur R. Miller, Civil Procedure § 14.9 at 658 (1985); *accord* 18 Wright, Miller & Cooper, *supra* § 4416 at 139. That is why it is invoked to prevent, or estop, relitigation of the same issues in a *subsequent* case. But where, as here, the effort has already been undertaken in the case before the ALJ and the decision rendered on the merits, the reasons for collateral estoppel are hardly served.

Putting this aside, Freeman cannot establish collateral estoppel anyway because the issue it seeks to preclude before the ALJ—whether Forsythe is totally disabled—is not the same legal issue as that presented by Forsythe in his claim for workers' compensation benefits and decided by the Illinois Industrial Commission. When a claimant files an application for benefits under Illinois'

Workers' Compensation Act, Ill.Ann.Stat. ch. 820, para. 305/1 *et seq.* (Smith–Hurd 1993), he must establish by a preponderance of the evidence that he is totally and permanently disabled. *See Esposito v. Industrial Com'n,* 186 Ill.App.3d 728, 134 Ill.Dec. 497, 503, 542 N.E.2d 843, 849 (1989). To be totally and permanently disabled under the Illinois Act means that the employee is "unable to make some contribution to the work force sufficient to justify the payment of wages." *Id.* Under the Black Lung Act, by comparison, the claimant does not have to establish that he is unable to work in the job market generally, rather, he need only establish that he is unable to participate in the narrower job market consisting of his usual coal mine employment or comparable and gainful work. It is obvious that inability to work in the job force *period* versus being unable to perform your usual coal mine employment or comparable work are different issues. As stated earlier, collateral estoppel only applies if the issue sought to be precluded is the same as that involved in the previous action. *See La Preferida,* 914 F.2d at 905–06; *see also* 18 Wright, Miller & Cooper, *supra* § 4417 at 148 (issue preclusion only applies when the same issue has been decided in one case and arises in another).

■ There is yet another reason why collateral estoppel is inappropriate here. Collateral estoppel should not apply where the party against whom preclusion is sought faced a heavier burden of persuasion in the first action compared with the second. *See* Restatement (Second) of Judgments § 28(4) (1982). This same principle also applies where the allocation of the burden is different in the two actions. *See id.; see also* 18 Wright, Miller & Cooper, *supra* § 4422 at 212 ("Shifts in allocation of the burden of persuasion generally should follow the same principle as changes in the decree [sic] of persuasion."). Assuming again for the sake of argument that the decision of the Illinois Industrial Commission was the "first" and the decision of the ALJ is the "second," it is obvious that the allocation of the burden of persuasion on the issue of total disability is different under the two statutory schemes. Under the Illinois Workers' Compensation

Act the claimant has the burden of establishing that he is unable to meaningfully participate in the job market. If he fails to meet this burden, then, as in this case, he may only be able to recover for partial disability. Compare this with the Black Lung Act. Pursuant to regulations under the Act, the claimant need only establish 10 years of coal mine employment plus certain medical evidence demonstrating the presence of pneumoconiosis and he is presumed to be totally disabled due to pneumoconiosis. *See* 20 C.F.R. § 727.203(a). In other words, if the claimant is able to invoke the interim presumption, he does not have to affirmatively present evidence on the issue of total disability. Instead, once the claimant has established the interim presumption, it is then the employer who bears the burden of persuasion to disprove total disability by showing that the claimant is either able to perform his usual coal mining job or comparable, gainful work. *See* 20 C.F.R. § 727.203(b)(2). And it is precisely this difference in the allocation of burdens that explains any alleged inconsistency (of which Freeman makes much) between the Illinois Industrial Commission's determination that Forsythe was only permanently, *partially* disabled due to pneumoconiosis, and the ALJ's conclusion that Forsythe was *totally* disabled due to pneumoconiosis. In his workers' compensation action, Forsythe obviously failed to carry his burden of persuasion on the issue of total disability. In his action before the ALJ, however, Forsythe, through the presumption, established total disability. But Freeman, who had the burden of persuasion to disprove total disability, failed to carry that burden. As stated by Wright, Miller & Cooper issue preclusion does not apply to such a situation because the "[f]ailure of one party to carry the burden of persuasion on an issue should not establish the issue in favor of an adversary who otherwise would have the burden of persuasion on that issue in later litigation." 18 Wright, Miller & Cooper, *supra* § 4422 at 212. Therefore, we conclude that the Board

did not commit legal error in refusing to entertain Freeman's claim of collateral estoppel.

### C. True Doubt

Freeman argues that the true doubt rule violates section 7(c) of the Administrative Procedures Act because it allows a claimant to receive the benefit of a presumption of disability without first establishing entitlement to it by a preponderance of the evidence. This court has recently upheld the validity of the true doubt rule in the face of the very same attack by the very same party. *See Freeman United Coal Min. Co. v. Director, OWCP,* 988 F.2d 706 (7th Cir.1992) (per curiam), *reh'g denied, Freeman United Coal Min. Co. v. OWCP,* 999 F.2d 291 (7th Cir.1992) (per curiam), *petition for cert. filed,* 62 U.S.L.W. 3429 (U.S. Dec. 10, 1993) (No. 93–935). Freeman conceded at oral argument that *stare decisis* requires us to follow our previous decision in Freeman, and so we simply refer to that case in rejecting Freeman's challenge to the validity of the true doubt rule in this Circuit.[5]

### D. Rebuttal of Total Disability under 20 C.F.R. § 727.203(b)

Freeman finally argues that, under 20 C.F.R. § 727.203(b), it can rebut Forsythe's presumptive showing of disabling pneumoconiosis. When a miner is able to invoke the interim presumption pursuant to 20 C.F.R. § 727.203(a), as was done here, he is considered (1) totally disabled (disability); (2) due to pneumoconiosis (disease); (3) which arose out of his coal mine employment (causation). *Peabody Coal Co. v. Shonk,* 906 F.2d 264, 269 (7th Cir.1990). Generally speaking, at this point Freeman could have knocked out any of these three presumed factors pursuant to one of the rebuttal provisions in § 727.-202(b)(1)–(4). The Supreme Court in *Mullins Coal v. Director, OWCP,* 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987), has stated that once the interim presumption is established, as it was here, by x-ray evidence

---

5. The Supreme Court in *Director, OWCP v. Greenwich Collieries,* —— U.S. ——, 114 S.Ct. 751, 127 L.Ed.2d 69 (1994) has recently agreed to hear argument in a case out of the Third Circuit, *Greenwich Collieries v. Director, OWCP,*

990 F.2d 730 (3d Cir.1993), which held that the true doubt rule is neither appropriate under the Black Lung Benefits Act nor the Administrative Procedures Act.

of pneumoconiosis pursuant to § 727.-203(a)(1), then the employer cannot rebut the presumption by showing, under § 727.-203(b)(4), that the disease was *not* pneumoconiosis. *See id.* at 150, 108 S.Ct. at 435–36; *accord Peabody,* 906 F.2d 264, 269 (1990).[6] Furthermore, it is undisputed that Forsythe was not performing his usual coal mine work or comparable work when he filed his claim so this precludes a showing of rebuttal under § 727.203(b)(1). *See* 20 C.F.R. § 727.-203(b)(1) ("The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable work and gainful work"). Thus, Freeman's only options to rebut the presumption, and to avoid shelling out benefits under the Act, would either be to disprove disability, pursuant to § 727.-203(b)(2), or, causation, pursuant to § 727.-203(b)(3). The ALJ found, and the Board agreed, that Freeman could establish neither.

### 1. § 727.203(b)(2)

▮ In order to establish rebuttal under (b)(2) and thus refute the presumption of total disability, Freeman had to demonstrate that, in light of all relevant evidence, Forsythe was able to perform his usual coal mine work or comparable and gainful work. *See* 20 C.F.R. § 727.203(b)(2). We have recognized that the literal terms of (b)(2) cannot be met if *any* impairment, not just pneumoconiosis, prevents the miner from engaging in his usual coal mining employment or from performing comparable work. *See, e.g., Freeman United Coal Min. v. Benefits Review Board,* 912 F.2d 164, 171 (7th Cir.1990); *Peabody,* 906 F.2d 264, 269 (7th Cir.1990); *Wetherhill,* 812 F.2d 376, 379–80 (7th Cir. 1987) (*dicta*).

As stated earlier, the ALJ denied rebuttal under (b)(2) because Freeman's medical evidence failed to rule out the possibility that Forsythe's various physical impairments prevented him from performing his usual coal mining employment. The ALJ noted that neither Dr. Selby nor Dr. Sanjabi ruled out the existence of "at least some degree of

respiratory or pulmonary impairment." He also noted that Dr. Selby and Dr. Sanjabi both reported that Forsythe was significantly impaired due to his heart disease. Finally, the ALJ pointed out that the record before him contained absolutely no evidence to support a finding that Forsythe was able to perform comparable and gainful employment. As a result, the ALJ determined that Freeman could not establish rebuttal under (b)(2).

Freeman criticizes the ALJ for attributing greater weight to the medical testimony of Dr. Khan, over that of Dr. Selby, simply because the former was Forsythe's treating physician and thus had a better overall picture of Forsythe's condition. According to Freeman, this amounted to an irrational method of weighing conflicting medical evidence. By itself this statement is correct. We have noted on previous occasions that "ALJs cannot afford more weight to an examining physician's opinion solely because that doctor personally treated the claimant." *Amax Coal Co. v. Beasley,* 957 F.2d 324, 327 (7th Cir.1992); *see also Amax Coal Co. v. Franklin,* 957 F.2d 355, 359 (7th Cir.1992) (rejecting the "traditional but unwarranted" preference of some ALJs for assigning greater weight to the opinion of the claimant's treating physician over that of a nontreating specialist).

Nevertheless, the ALJ's error was harmless. As we stated earlier in our opinion, to establish rebuttal under (b)(2), the employer cannot just dispute the existence of an impairment, but must put forward evidence demonstrating that, notwithstanding any impairments, the claimant is still able to perform his usual coal mine employment or comparable employment. From our examination of the record, however, it is clear that Freeman's rebuttal evidence under (b)(2) was insufficient to show that Forsythe was still able to perform his usual work. For example, Dr. Selby devoted the bulk of his report to explaining how Forsythe does not have totally or partially disabling pneumoconiosis, and even went so far as to say that Forsythe has the respiratory and pulmonary capacity to

---

6. *Mullins* made it clear that an employer can still show the nonexistence of pneumoconiosis by introducing "nonqualifying x-ray evidence at the invocation stage to oppose invocation under § (a)(1).... " *Mullins,* 484 U.S. at 150, 108 S.Ct. at 435 (emphasis added).

perform his usual coal mine employment at Freeman. What is problematic with Dr. Selby's report, however, for purposes of (b)(2), is that it later goes on to explicitly portray Forsythe as being significantly impaired as a result of his "life threatening" heart disease, without ever addressing whether this far more serious impairment imposed any limitations upon Forsythe's ability to perform his usual coal mining duties. Thus, instead of conclusively establishing rebuttal under (b)(2), Dr. Selby's report actually provides an independent basis—Forsythe's heart disease—for finding no rebuttal under that same subsection. Similarly, Dr. Sanjabi's report, relied heavily upon by Dr. Selby, also concluded that Forsythe's limitations are largely attributable to his cardiovascular condition; nowhere in his report, however, does Dr. Sanjabi so much as mention Forsythe's ability to engage in his usual coal mining duties or comparable employment. Therefore, despite any error on the part of the ALJ in giving extra weight to the opinion of the treating physician, Freeman's rebuttal evidence was insufficient, as a matter of law, to establish rebuttal under (b)(2).[7] *See Freeman,* 912 F.2d at 171–72.

### 2.  § 727.203(b)(3)

■  An employer can rebut the presumption under (b)(3) if it can establish that "the total disability ... did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(3). Under (b)(3) the employer has the burden of establishing that "the miner's pneumoconiosis was not a contributing cause of his total disability." *Freeman United Coal Min. v. Benefits Review Board,* 919 F.2d 451, 453 (7th Cir.1990) (emphasis added) (citation omitted). Thus, if pneumoconiosis was even a contributing factor to the claimant's disability, rebuttal under (b)(3) is not available. *See Freeman United Coal Min. Co. v. Anderson,* 973 F.2d 514, 518 (7th Cir.1992); *Freeman,* 919 F.2d at 453; *Wetherhill,* 812 F.2d at 380.

The ALJ found that both Drs. Sanjabi and Selby diagnosed Forsythe as having simple pneumoconiosis. The ALJ observed that

neither doctor provided any meaningful discussion on the effects of Forsythe's simple pneumoconiosis on his overall condition. On the other hand, the ALJ noted that Drs. Khan and Vest attributed a significant level of disability to Forsythe's pneumoconiosis. After reviewing all the evidence, the ALJ found that Freeman's medical evidence did not rule out the possibility that Forsythe's pneumoconiosis was at least a contributing factor to his total disability and therefore concluded that Freeman had failed to present sufficient evidence for rebuttal under (b)(3).

Freeman claims that, in rejecting rebuttal under (b)(3), the ALJ improperly discredited the medical opinions of Drs. Selby and Sanjabi. Freeman claims that the ALJ seized upon some alleged equivocation on the part of both doctors with respect to the effect of Forsythe's pneumoconiosis, and, in so doing, impermissibly raised the standard on rebuttal from proof by a preponderance of the evidence to proof beyond a reasonable doubt. In support of its argument Freeman relies on our decision in *Amax Coal Co. v. Beasley, supra.* In *Beasley,* part of the employer's rebuttal evidence under (b)(3) included the deposition testimony of a doctor (who incidentally was Dr. Sanjabi) who stated that it was "within the realm of reasonable medical certainty" that the claimant's total disability was caused by cigarette smoking. The ALJ found this statement was equivocal and thus insufficient to rule out the possibility that pneumoconiosis played a part in the claimant's lung impairment. We disagreed, noting that "the standard on rebuttal is not proof beyond a reasonable doubt, but proof by a preponderance of the evidence," *Beasley,* 957 F.2d at 328, and reversed because the doctor's statement was sufficient under that standard to establish rebuttal under (b)(3). *Id.* Freeman contends that, here, too, the ALJ seized upon some perceived equivocation in the testimony of Drs. Selby and Sanjabi and then used this as a basis for its statement that neither doctor "w[as] able effectively to rule out" the effects of Forsythe's coal mine employment on his overall

---

7.  Given our conclusion that Freeman failed to present sufficient rebuttal evidence under (b)(2) we will not address Freeman's argument that the report of Dr. Khan was inherently irrational.

condition. According to Freeman, this statement of the ALJ violates *Beasley* because it holds Freeman to a higher standard of proof than is required under (b)(3).

We disagree because the facts in our case bear little resemblance to those in *Beasley*. In *Beasley* all doctors of record stated that the claimant's pneumoconiosis was inconsequential in light of his other problems. Even the claimant's treating physician in that case, Dr. Sanjabi—whose testimony the employer relied upon in attempting to establish rebuttal under (b)(3)—stated in his report that while claimant may have pneumoconiosis, the majority of his problems were caused by cigarette smoking and heart disease. With respect to Dr. Sanjabi's "reasonable medical certainty" statement—which the ALJ found "equivocal"—the court in *Beasley* commented that "it is difficult to imagine a more convincing statement that the claimant's exposure to coal dust had little or nothing to do with his disability." *Id.* at 328. Here, by comparison, Dr. Sanjabi's statements were truly equivocal. In his report Dr. Sanjabi stated that, with respect to Forsythe's overall condition, there was in fact some "probable effect" from "mild simple pneumoconiosis." But then he goes on to state that, according to "common medical knowledge," Forsythe's degree level of pneumoconiosis was not "physiologically significant" and "usually does not cause any impairment measurable by our common testing." So which is it? It is obvious that such contradictory opinions cannot rule out a causal connection between Forsythe's pneumoconiosis and his overall condition. Thus, Dr. Sanjabi's opinions are at best ambiguous, and for that reason alone the ALJ properly discounted them for purposes of rebuttal under (b)(3). *See Freeman*, 919 F.2d at 454. Dr. Selby's report fares no better. In his report, he stated that Forsythe's pneumoconiosis was not "contributing significantly" to his pulmonary condition. Of course, the fact that it was not contributing *significantly* does not "exclude the possibility that the disease contributed in some, presumably lesser, degree." *Id.* Dr. Selby also went on to say, in the following sentence of his report, that Forsythe has "no totally disabling pneumoconiosis and no partial impairment of his respira-

tory status from pneumoconiosis." However, Forsythe's pneumoconiosis itself need not be totally or even partially disabling; it only needs to contribute to his total disability. *See Old Ben*, 7 F.3d at 1278. In short, the ALJ did not hold Freeman to an impermissibly steep standard of proof. Instead, Freeman's evidence was simply insufficient to establish, by a preponderance standard, that pneumoconiosis played no part in Forsythe's overall condition.

### III.

For the foregoing reasons, we DENY Freeman's petition for review and AFFIRM the ALJ's award of benefits.